THE NATIONAL CITY BANK OF NEW YORK, demandante y apelado, *v.* FRANCISCO DE LA TORRE y MERCEDES DE LA TORRE y su esposo ARTURO O'NEILL, demandados y apelante el primero.

No. 6418.—*Sometido:* Enero 15, 1936. *Resuelto:* Febrero 10, 1936.

*L. Muñoz Morales* y *J. Ramírez Santibáñez,* abogados del apelante; *Fiddler, Córdova & McConnell,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Resuelto este recurso por sentencia de febrero 20, 1935, confirmando la apelada (48 D.P.R. 134) el apelante Francisco de la Torre, en febrero 28, pidió permiso para presentar una moción solicitando su reconsideración. Se le concedió hasta marzo once siguiente, plazo que le fué extendido hasta abril 10, 1935, en que la moción fué archivada. Se oyó a las partes sobre la moción el 20 de mayo siguiente, concediéndoseles permiso para presentar memorándum, el último de los cuales quedó radicado en enero 15, 1936.

Se trata de una sentencia dictada en rebeldía. Emplazado el demandado Francisco de la Torre, excepcionó la demanda y su excepción fué declarada sin lugar. Contestó entonces. Excepcionó el demandante la contestación por falta de hechos constitutivos de defensa y la excepción fué declarada con lugar con permiso al demandado para enmendar su contestación dentro del plazo de diez días. Nada hizo el demandado. No pidió reconsideración. No presentó demanda enmendada. No solicitó sentencia sobre las alegaciones. Y el demandante pidió y obtuvo que se anotara su rebeldía y se dictara sentencia en contra suya, siendo de esa sentencia de la que apeló para ante este tribunal.

Los fundamentos que tuvimos para declarar que tratándose de un pleito que emanaba de un contrato sobre pago de dinero—cobro de un pagaré—el secretario estaba autorizado para registrar la sentencia, y los que nos llevaron a concluir que la demanda alegaba hechos suficientes para establecer la acción ejercitada, quedan en pie.

Con respecto al alegado error cometido por la corte de distrito al declarar con lugar la excepción previa a la contestación, dijimos que dada la actitud asumida por la parte demandada y apelante en la corte de distrito, no cabía ni siquiera discutirlo. Eso no obstante manifestamos que estudiada la cuestión en sus méritos creíamos que había sido correctamente decidida por la corte sentenciadora cuya resolución fundada transcribimos en nuestra opinión. 48 D.P.R. 140. Y así lo seguimos creyendo no obstante el extraordinario esfuerzo hecho por el apelante para demostrar que nuestro criterio es erróneo.

■ Sabemos que a los efectos de la excepción previa presentada contra la contestación hay que admitir como ciertos los hechos alegados en la misma, pero esto no quiere decir que la corte al admitir la verdad pierda su poder para fijar su alcance y esté obligada por determinada aislada afirmación que el documento contenga cuando a su juicio esa afirmación queda destruída por otras que surgen del propio documento.

■ Examinada la contestación y la escritura de hipoteca acompañada a la misma a la luz de la jurisprudencia sentada por esta corte entre otros casos en el de *National City Bank* v. *Martínez Llonín*, 41 D.P.R. 163, lo que permanece como conclusión final, no obstante las afirmaciones que se hagan en contrario, es que la relación del demandado apelante para con el demandante apelado es la de un deudor solidario con la otra demandada doña Mercedes de la Torre.

La jurisprudencia quedó establecida en los siguientes términos:

"Uno que, para servir o beneficiar a otros y sin tener el carácter de deudor directo, firme como deudor solidario un documento en que se contiene una obligación de pagar, establece en dicho documento la ley del contrato—en cuanto a ser tal deudor solidario y no un fia-dor—como última expresión de la voluntad de las partes y a ella, por tanto, queda sometido como tal deudor·solidario." 41 D.P.R. 164.

Pero aun aceptando que tuviera razón el apelante al afir-mar que "toda la base jurídica de este pleito descansa esen-cialmente en que este demandado, Francisco de la Torre, no es un deudor solidario, sino un fiador solidario", aun así ha-bría siempre que concluir que la contestación no aduce he-chos suficientes constitutivos de una defensa meritoria.

■■ Invoca al apelante el artículo 1751 del Código Civil, ed. 1930, que dispone que "Los fiadores, aunque sean solida-rios, quedan libres de su obligación siempre que por algún hecho del acreedor no puedan quedar subrogados en los de-rechos, hipotecas y privilegios del mismo", y cita extensa-mente a los comentaristas franceses Colin y Capitant, quie-nes refiriéndose a una disposición igual del Código Civil de su nación, dicen, en parte:

"Ya sabemos que en la práctica, el acreedor a quien el deudor ofrece un fiador, pide a éste, en la inmensa mayoría de los casos, que se obligue solidariamente. En materias de deudas reconocidas y consignadas en *documentos mercantiles,* esta solidaridad del fiador— o *dador de aval*—viene incluso establecida de pleno derecho por el artículo 142 del Código de Comercio·

"Ya hemos dicho que esta solidaridad tiene como efecto privar al fiador del derecho a alegar el beneficio de excusión y el beneficio de división, pero el fiador solidario, en sus relaciones con el acreedor, ¿debe hallarse enteramente asimilado a un codeudor solidario ordi-nario—y, por consiguiente, habrá que aplicarle las reglas consignadas en los artículos 1,200 y sucesivos, sin hacer caso para nada de las del título 'De la fianza'—o podrá, por el contrario, seguir amparán-dose, desde algunos otros puntos de vista, y con relación al acreedor, en su calidad de *fidejussor?*

"Esta cuestión ofrece varios extremos de· verdadero interés prác-tico. He aquí, singularmente, dos puntos sobre los cuales difieren las reglas de la solidaridad y las de la fianza:

"B. El art. 2,037, como pronto veremos, dispensa al fiador de su obligación cuando la subrogación en los derechos y garantías del acreedor no puede ya operarse en su favor por un hecho de ese mismo acreedor.

"Esta disposición pronunciada especialmente en beneficio del fiador, no puede entenderse ampliada al codeudor solidario, deudor principal, obligado siempre a satisfacer la deuda que pesa tanto sobre él como sus coobligados. Por consiguiente, ¿se podrá permitir al fiador solidario que la invoque o habrá que negarle tal beneficio?

"En este punto la jurisprudencia y la doctrina se muestran de acuerdo. Una y otra admiten que el art. 2,037 debe aplicarse al fiador solidario, porque la fianza, cualesquiera que sean sus modalidades, impone al acreedor la obligación de conservar sus garantías al fiador (Pau, 21 de enero de 1884, D. P. 85, 2. 77, S. 86, 2. 90; Trib. Civ. Béziers· 9 de abril de 1894, en Cas., D. P. 1904. 1. 430, s. 1902, 1. 86).

"De suerte que la solidaridad no priva al fiador de su calidad de codeudor accesorio, en la medida en que ésta es compatible con el compromiso solidario por aquél contraído. Habremos de decidir, por lo tanto, que el fiador solidario podrá invocar la compensación que corresponda al deudor principal, facultad de que no podría gozar un codeudor solidario (V. art. 1,294, párrafo 1º., y art. 2,036), y que los hechos que interrumpen la prescripción, dirigidos contra él, no surtirán ningún efecto con relación al deudor principal.

"CONDICIONES PRECISAS PARA QUE EL FIADOR PUEDA INVOCAR LA EXCEPCIÓN DE SUBROGACIÓN.—Estas condiciones son dos:

"1ª. *Es menester que el acreedor haya faltado a su obligación de conservar las garantías afectas a responder del crédito.*—Poco importa, por lo demás, que la pérdida de la garantía provenga de un hecho realizado por él directamente—por ejemplo, que haya dispuesto la cancelación de una inscripción hipotecaria antes de que se le haya pagado por completo, o que haya renunciado a su privilegio (Civ., 6 de febrero de 1911, D. P. 1911. 1. 253, S. 1911. 1. 501)— o que provenga de una simple negligencia, tal como la falta de renovación de una inscripción.

"2ª. *Es necesario que la culpa del acreedor haya ocasionado un perjuicio al fiador.*—Por tanto, si llegárase a demostrar que las garantías a que el acreedor ha renunciado hubieran sido ineficaces, dejará de tener aplicación el art. 2,037, siendo, por lo demás, al fiador a quien incumbe la prueba del perjuicio de que se queja (Véase nota

de Lyon-Caen en S. 96, 1. 65; Req., 18 de marzo de 1901, D. P. 1903.
1. 345, S. 1903. 1. 137, nota de Wahl; 2 de diciembre de 1903;
D. P. 1905. 1. 9, S. 1908. 1. 138.)'' 5. Curso Elemental de De-
recho Civil por Ambrosio Colin y H. Capitant, traducido al español
por Demófilo De Buen, 23, 24, 25, 34 y 35.

Y sostiene que en su contestación se aducen hechos cons-
titutivos de una buena defensa al amparo del precepto legal
invocado tal como se interpreta por Colin y Capitant, ya que
en ella se alega que el acreedor concedió a la deudora pró-
rrogas en contra de lo pactado e impidió al fiador subrogarse
en su lugar en la hipoteca constituída por la deudora al re-
nunciar tácitamente a ella iniciando este pleito y embargando
bienes del fiador para hacer efectiva la sentencia que pudiera
dictarse en el mismo.

Examinemos la cuestión de las prórrogas. La defensa se
formuló en la contestación como sigue:

''Y este demandado compareciente además alega:—Que tanto el
prestamista American Colonial Bank of Porto Rico como su sucesor
o cesionario, el demandante The National City Bank of New York,
posteriormente, y sin conocimiento y consentimiento de este deman-
dado, le concedieron prórrogas para el pago de dicho préstamo a
la prestataria Mercedes de la Torre, sin mediar el pago de intereses
y sin mediar ninguna consideración de valor además del pago de
intereses. Por lo que este demandado alega que hoy está totalmente
extinguida la referida fianza prestada por él en el mencionado con-
trato de préstamo.''

Tratándose de una fianza solidaria, es bien sabido que la
prórroga no releva de su obligación al fiador, pero el deman-
dado apelante sostiene que habiendo alegado en su contesta-
ción que se convino entre las partes que las prórrogas sólo
podrían concederse mediante consideración, la situación varía.

Todo lo que se pactó sobre prórrogas en la escritura de
reconocimiento de deuda e hipoteca otorgada después del
pagaré y después del alegado convenio verbal, por el propio
apelante en compañía de doña Mercedes de la Torre y que
contiene por tanto la última expresión de sus voluntades, fué:

''TERCERA.—Con arreglo a los términos del pagaré aquí reseñado

el Banco podrá, a petición de cualquiera de los deudores, prorrogar dicha obligación por plazos mensuales mediante el pago de los intereses por cada mes vencido al tipo convenido, o bien renovarla por otra nueva, bastando que en ella conste que está también garantizada con esta hipoteca en las mismas condiciones, subsistiendo siempre la hipoteca como garantía colateral hasta el día del pago aun cuando las renovaciones o nuevos pagarés excedieren del año que aquí se fija para el plazo de la hipoteca, pues ésta subsistirá en todo su valor garantizando dicha deuda hasta que el Banco sea pagado totalmente.''

Y ya en el cuerpo del pagaré se había consignado ''We and each of us, hereby agree that the holder of this note may, for any valuable consideration, extend the time of payment thereof, without notifying us, and that we will remain liable thereon thereafter as if we had expressly consented to such extension'' y se había agregado bajo la sola firma de F. de la Torre ''I, (we) hereby agree and consent to any extension of time or renewal of the within note and guarantee the payment of the same when due, or at any time thereafter, waiving demand, notice and protest.''

La contención del apelante no está, pues, sostenida por los documentos en que su propia contestación se basa. Pretende estarlo por un convenio verbal que se alega como sigue:

''Y aquí alega además el demandado compareciente:—que en dicho día, después de suscrito y entregado el pagaré referido y antes de otorgarse la mencionada escritura convino con el prestamista American Colonial Bank of Porto Rico, en que su condición de fiador fuese solidaria pero con limitación en cuanto a las prórrogas, obligándose el prestamista a no concederlas sin consentimiento del fiador compareciente, a excepción de aquéllas que fuesen mediante el pago de intereses y además por alguna valuable consideración (for any valuable consideration).''

Admitiendo que los términos del pagaré pudieran variarse por un contrato verbal posterior como el que aquí se alega, nos encontramos con que con posterioridad al mismo se otorgó la escritura de reconocimiento de deuda e hipoteca entre otros motivos, según se consigna en la contestación, porque el ape-

lante deseó "aclarar en lengua española, por su falta de dominio de la inglesa, sus obligaciones y derechos como fiador en el referido préstamo". Y así la propia contestación destruye la eficacia que pudiera tener el alegado contrato verbal, porque debe concluirse que la escritura posterior contiene la última expresión del pacto de las partes.

En cuanto a la subrogación, bastará decir que en la repetida escritura de reconocimiento de deuda e hipoteca, se pactó lo que sigue:

"CUARTA.—El Banco acreedor se reserva el derecho, en caso de incumplimiento de esta obligación, de exigir su pago total de cualquiera de los deudores o de ambos a la vez y de reclamar judicialmente el pago de la hipoteca, todo ello a opción exclusiva del Banco, por el orden que convenga al acreedor o persiguiendo dichas garantías todas a un tiempo."

En tal virtud lo que hizo el banco demandante fué ejercitar su derecho en la forma en que éste le fué reconocido expresamente por el propio demandado apelante. Y si se toma en consideración además lo pactado en la cláusula tercera de la escritura que se transcribió anteriormente con respecto a la subsistencia de la hipoteca, se verá que no hay base para la aplicación del artículo 1751 del Código Civil, ed. 1930, invocado.

*La moción de reconsideración debe ser declarada sin lugar.*
El Juez Asociado Sr. Córdova Dávila no intervino.