JORGE R. REYES y su esposa TEÓFILA ERAZO DE REYES, ETC., demandantes y recurrentes; *v.* SUCESIÓN DE GIL SÁNCHEZ SOTO, ETC., demandados y recurridos.

*Número:* R-67-241        *Resuelto:* 30 de enero de 1970

306

*Jorge Luis Ruiz Rivera, Faustino R. Aponte* y *Arturo Aponte Parés,* abogados de los recurrentes; *Félix Ochoteco, Jr., Luis R. Polo* y *José C. Jusino,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Los recurrentes Jorge R. Reyes y su esposa Teófila Erazo demandaron a los recurridos que constituyen la Sucesión de Gil Sánchez Soto, en daños y perjuicios. En la demanda que se interpuso en la Sala de San Juan del Tribunal Superior, se alega que la recurrente Teófila Erazo nació en 8 de enero de 1908 fruto de relaciones de Don Gil Sánchez Soto; que la recurrente fue considerada como hija, tanto por su padre Don Gil Sánchez Soto como por sus hijos Alejandro, Florencio y María Sánchez Soto; que considerada como tal se le ofreció como parte de la herencia de su padre una parte igual a la de los demás herederos; que dichas ofertas de participación en la herencia se hicieron con el propósito de que la recurrente perdiera su derecho a instituir una acción para reclamar su filiación por vía forzosa; que esas actuaciones fueron corroboradas por cartas escritas por su hermana la demandada María Sánchez; que el demandado Alejandro Sánchez le ha hecho manifestaciones a diferentes personas asegurando el derecho de la recurrente a la herencia pero negándole el reconocimiento.

Alega además la demanda que la recurrente radicó acción para el reconocimiento forzoso en el mes de septiembre de 1965 y se le pasó el término prescriptivo de caducidad para instar dicha acción, y que ella fue inducida por estas actuaciones de los demandados, especialmente por el demandado Alejandro Sánchez, a no ejercer el derecho que le pertenecía para radicar una causa de acción para su reconocimiento forzoso; que las actuaciones dolosas, ilegales y engañosas consistieron en manifestaciones verbales y escritas de Don Alejandro Sánchez y de Doña María Sánchez y de otros miembros de la Sucesión, los demandados; que debido a esa conducta ilegal, dolosa y engañosa, la recurrente perdió su derecho a una causa de acción para que fuese reconocida forzosamente ya que la misma caducó; que dichas actuaciones ilegales, dolosas, engañosas y negligentes le causaron daños que alega en la cantidad de $500,000.

Contra la anterior demanda, los demandados interpusieron moción de desestimación "por no aducir la misma hechos constitutivos de causa de acción a favor de los demandantes y contra los demandados." Oídas las partes, la Sala sentenciadora declaró con lugar la moción para desestimar de los demandados y por entender que la demanda no era susceptible de enmienda, dictó sentencia final desestimándola a todos los efectos legales. Para revisar dicha sentencia expedimos el presente recurso.

Fue de opinión la Sala sentenciadora que el Art. 1802 del Código Civil no es aplicable a una situación de hechos como la contenida en las alegaciones de la demanda, por el fundamento de no creer la Sala que la culpa y negligencia a que se refiere el citado artículo sea aplicable a la conducta de los demandados alegada por la demandante.

En *Boulon* v. *Pérez*, 70 D.P.R. 988 (1950), dijimos a la página 993:

"Según el tratadista Moore en su obra, tomo, sección y página citados 'Una demanda puede ser desestimada mediante moción a ese efecto si claramente carece de méritos. La carencia de méritos puede consistir en la no existencia de una ley que sostenga una reclamación como la que se ha hecho, en la ausencia de hechos suficientes para que la reclamación sea válida, o en la alegación de algún hecho que necesariamente destruya la reclamación. Mas una demanda no debe ser desestimada por insuficiencia, a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación.' Por otra parte, según dijo la Corte de Circuito de Apelación para el Cuarto Circuito en *Tahir Erk* v. *Glenn L. Martin Co.*, 116 F.2d 865, 4 Fed. Rules Serv. 12b.34, caso 1, pág. 143, '. . . al resolver sobre la validez de una moción para desestimar por falta de hechos, el deber de la corte no es determinar los méritos finales de la reclamación con el propósito de decidir cuál de las partes debe prevalecer. Su deber más bien es considerar si a la luz de la situación más favorable al demandante y resolviendo toda duda a favor de éste, la demanda es suficiente para

constituir una reclamación válida.' Véanse también *Cohen* v. *United States,* 129 F.2d 733, 6 Fed. Rules Serv., caso 1, pág. 112 y *Leimer* v. *State Mutual Life Assurance Co.,* 108 F.2d 302, 2 Fed. Rules Serv., pág. 86; cf. *National City Bank* v. *De la Torre,* 49 D.P.R. 562, y *Rossy* v. *Del Valle,* 45 D.P.R. 599."

■ Aplicábamos ahí la Regla 12(b)(6) de las de Enjuiciamiento Civil de 1943, que permitía solicitar la desestimación de una demanda por "dejar de exponer hechos constitutivos de una causa de acción." El equivalente de dicha Regla en las de Procedimiento Civil de 1958 es la 10.2(5) "Dejar de exponer una reclamación que justifique la concesión de un remedio." El texto de la actual Regla es aun más favorable para un demandante, ya que la moción para desestimar no ha de considerarse sólo a la luz de una causa de acción determinada y sí a la luz del derecho del demandante a la *concesión de un remedio,* cualquiera que éste sea. En vista de ello, las expresiones que hicimos en el caso de *Boulon,* particularmente la de que una demanda no debe ser desestimada por insuficiencia, a menos que se desprenda con toda certeza que el demandante no tiene derecho a *remedio alguno* bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación, tienen aun mayor virtualidad después de las Reglas de 1958. Véase: la Regla 6.5(b) de 1958, que permite a un demandante hacer reclamaciones de su derecho en la alternativa, y hasta hipotéticamente; y permite hacer reclamaciones "inconsistentes" (incompatibles) entre sí.

En *Colón* v. *San Patricio Corporation,* 81 D.P.R. 242 (1959), revocamos la sentencia que desestimó la acción a base de que la demanda no aducía una reclamación válida (pág. 266), y dijimos:

"Con palabras que de puro haber sido usadas ya constituyen un estribillo, repetimos que . . . 'no procede desestimar una demanda a menos que aparezca con certeza que el demandante no tiene derecho a remedio alguno bajo cualquier situación de

hechos que puedan probarse como fundamento de su reclama-ción', y que . . . 'al resolver sobre la validez de una moción para desestimar [una demanda] por falta de hechos, el deber de la corte no es determinar los méritos finales de la reclamación con el propósito de decir cuál de las partes debe prevalecer. Su deber más bien es considerar si a la luz de la situación más favorable al demandante y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida.' [citas]"

Hemos seguido esa norma sin alterarla, aun en el caso de *Figueroa Piñero* v. *Miranda & Eguía*, 83 D.P.R. 554 (1961), en que la ratificamos y la usamos como medida (pág. 558) al confirmar la sentencia que había desestimado la demanda de daños por incumplimiento de contrato, por falta de hechos. En *Sierra* v. *Tribunal Superior*, 81 D.P.R. 554 (1959) dijimos, pág. 560, que en el procedimiento civil moderno las alegaciones tienen una sola misión, cual es el notificar a *grandes rasgos* las reclamaciones y defensas de las partes.

—o—o—o—o—

El concepto de culpa del Art. 1802 del Código Civil —ed. 1930—es infinitamente abarcador, tan amplio y abarcador como suele ser la conducta humana. J. Casares, en su *Diccionario Ideológico*, 2a. ed. 1963, define culpa como "falta más o menos grave, cometida a sabiendas y voluntariamente." Y "falta" como "defecto en el obrar." Cabanellas expresa que en su sentido amplio se entiende por "culpa" cualquier falta, voluntaria o no, de una persona que produce un mal o daño, en cuyo caso *culpa* equivale a *causa*. Y señala hacia la culpa "dolosa" y la culpa "negligente". *Diccionario de Derecho Usual*, Tomo 1, 5ta. ed., 1963.

Hablando sobre la culpa como fuente de obligación, dice Don Federico Puig Peña en su artículo Culpa Civil, *Nueva Enciclopedia Jurídica*, Tomo VI, 1954, a la pág. 108, que cuando una persona causa con su conducta daño a un tercero

en su persona o bienes, sin que ese daño pueda relacionarse con un vínculo anterior que los una, debe resarcir el daño, y que esta fuente de obligaciones de gran alcance en el Derecho moderno ha sido siempre reconocida, "si bien no siempre con la *amplitud de criterio con que hoy queda dibujada*", y que la idea de una reparación del daño aparece ya en los más antiguos Derechos, singularmente en el Romano. Pero observa que no obstante la idea de reparar el daño en el Derecho antiguo, no existía en ellos una disposición general de alcance absoluto y universal para la reparación de todo daño ilícito causado, sino situaciones especiales, y en cambio, en el Derecho actual *"existe el principio general* consignado en el artículo 1089, [art. 1042 nuestro, ed. 1930] (*) y más concretamente en el 1902 del Código Civil [1802 nuestro] por virtud de que 'el que, por acción u omisión, causa daño a otro interviniendo culpa o negligencia, está obligado a reparar el daño causado.' " (1)

En el muy citado caso de *Hernández* v. *Fournier*, 80 D.P.R. 93 (1957), nos adherimos a ese concepto universal de la culpa. Refiriéndonos al Art. 1802 dijimos a la pág. 96:

"Según el citado artículo, que establece uno de los principios más fundamentales de nuestro orden jurídico—el de la responsabilidad aquiliana por hechos propios—*todo perjuicio*, material o moral, da lugar a reparación si concurren tres requisitos o elementos: *primero,* se establece la realidad del daño sufrido; *segundo,* existe un nexo causal entre el daño y la acción

---

(*) Art. 1042, ed. 1930:

"Las *obligaciones* nacen de la ley, de los contratos y cuasi contratos, y de los actos y omisiones *ilícitos o en que intervenga cualquier género de culpa o negligencia.*"

(1) En parecida forma, el concepto sajón de la culpa civil es igualmente abarcador. *Black's Law Dictionary,* 4ta. ed. 1951 define "fault", entre otros significados:"An error or defect of judgment *or of conduct*; any deviation from prudence, duty or *rectitude,* any shortcoming, or neglect of care or performance resulting from inattention, incapacity, *or perversity*; a wrong tendency, *course* or *act*; *bad faith* or *mismanagement*; neglect of duty."

u omisión de otra persona; y *tercero,* dicho acto u omisión es *culposo* o negligente. [citas] Ese precepto '. . . no admite limitación ni excepción de clase alguna; y por consiguiente el causante de un daño debido a culpa o negligencia, sean las que sean sus consecuencias, está obligado a repararlo, a que al perjudicado le desaparezcan los efectos del daño sufrido.' Borrell, op. cit., 169. Así, *la forma de realizar el daño es indiferente."* (Énfasis en parte suplido.)

En *Ramos* v. *Carlo,* 85 D.P.R. 353 (1962), citamos— pág. 359—la expresión de Barassi, reproducida por Santamaría, al efecto de que la convivencia social ordenada impone un deber general de corrección y de prudencia en relación con los demás ciudadanos, y el acto es ilícito en el sentido extracontractual cuando viola "los deberes generales de corrección social *o de conducta correcta,* deberes que no están escritos en los códigos pero que representan *el presupuesto mínimo sobreentendido* del orden de la vida social."

En igual sentido citamos de Castán—85 D.P.R. a la pág. 366—

"El autor del acto ilícito *responde siempre del daño,* ya lo haya producido *dolosamente* o por simple negligencia y cualquiera que sea su grado, pues se tiene en cuenta hasta la más ligera falta, en atención a que esta clase de *culpa* afecta más bien que al interés privado, *a relaciones de interés social".*

Hay un deber social que nos llega desde los más antiguos Derechos que impone el abstenerse de causar daño o perjudicar a un semejante, el *"alterum non laedere"* del Derecho Romano que como dice Black, *op. cit.,* junto al *"honeste vivere"* eran considerados por Justiniano como principios fundamentales sobre los cuales se basan todas las reglas de ley.

Así, en ese orden de pensamiento, observa Puig Peña, *op. cit.,* que todo acto u omisión ·que causa un daño a otro es ilícito, por ser contrario a Derecho, y que sólo dejará de serlo cuando concurra a favor del agente una causa de

exclusión de *antijuridicidad.* Véase también su *Derecho Civil,* Tomo IV, Vol. 11, pág. 571.

■ Si las infracciones a ese deber y obligación social que impone la convivencia humana ordenada de no causar daño a otro o perjudicarlo no hallaran remedio jurídico, la sociedad caería irremediablemente en el orden antijurídico del tomarse la justicia por la propia mano en represalia. De ahí la gran importancia para el orden social según anotan los tratadistas y reconocimos en *Fournier*, antes citado, de una disposición general, amplia y abarcadora en el Derecho moderno como lo es el Art. 1802 del Código Civil, que impone al infractor de ese deber social por acto de su *culpa* o de su negligencia, la reparación del daño por medios jurídicos de paz social. El concepto de la culpa incluye todo tipo de transgresión humana tanto en el orden legal como en el orden moral, y como dice Puig Peña, lleva en sí el presupuesto de la ilicitud y la antijuridicidad—lo contrario a Derecho— hasta que se muestren elementos de exclusión de tal ilicitud y antijuridicidad.

Toda obligación consiste en *dar*, hacer o no hacer alguna cosa, estatuye nuestro Código Civil en su Art. 1041, ed. 1930. Y según reza el 1042 que le sigue, las obligaciones nacen de la ley, . . . y de los *actos* y *omisiones ilícitos* o en que intervenga cualquier género de *culpa* o negligencia.

Examinadas las alegaciones de la demanda, no podemos convenir con la Sala sentenciadora en que bajo ningún estado de hechos que fuera probado, los demandantes y recurrentes no podrían tener derecho a resarcirse de un daño culposo bajo el Art. 1802 del Código Civil.

■ Pero volviendo al comienzo, la Regla 10.2 (5) actual no limita a los demandantes a que se les conceda un remedio bajo el Art. 1802. Ellos tienen derecho a que se les conceda un remedio, el que fuere conforme a un estado de hechos probados.

En este sentido, las alegaciones dan base para que, a tenor de la prueba practicada bajo dichas alegaciones, el tribunal pueda conceder remedios en adición a, o que no sean únicamente una compensación en daños bajo el citado artículo. En vista de que devolvemos el caso, creemos propio abstenernos de indicar ahora específicamente cuáles pueden ser tales otros remedios, para no intervenir anticipadamente en la orientación o disposición del litigio.

Después de dictada la sentencia recurrida, los demandantes solicitaron permiso para presentar una demanda enmendada, en que sin apartarse de las alegaciones originales, se hacen otras más específicas en torno a la conducta imputada a los demandados recurridos. La admisión de la demanda enmendada no se consideró, en vista de que ya estaba ante nos el presente recurso.

*Se dictará sentencia revocando la dictada por la Sala sentenciadora en moción para desestimar, y se devolverán los autos para que se continúe el litigio hasta su determinación final en los méritos, y para todo otro ulterior procedimiento compatible con lo aquí fallado.*

El Juez Presidente Señor Negrón Fernández, no intervino.