# 97 DTA 135

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE BAYAMON**

SALVADOR GARCIA OLLER, ET ALS.
Demandantes-Apelantes

v.

ASOCIACION DE RESIDENTES DE TORRIMAR, INC., ET ALS.
Demandados-Apelados

Núm. KLAN-96-00589

San Juan, Puerto Rico, a 17 de abril de 1997

Panel integrado por su Presidente, el Juez Sánchez Martínez
y los Jueces Broco Oliveras y Urgell Cuebas

Broco Oliveras, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

En el presente recurso de apelación se impugna la sentencia del Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Guaynabo, dictada el 15 de diciembre de 1994 con fecha de archivo en autos de su notificación de 29 de diciembre de 1994. Mediante dicha sentencia se desestimó una demanda en la que los apelantes reclamaban que se les admitiera como miembros (con los derechos que ser miembro conlleva) de una asociación de residentes de una urbanización de acceso controlado con el propósito de que se le concediera acceso al área restringida.

Por entender que erró el tribunal *a quo* al desestimar en su totalidad la demanda, se revoca la sentencia apelada.

# I

El Sr. Salvador García Oller y su esposa, los apelantes, residen y son dueños de una casa localizada en la calle Ramírez de Arellano esquina con la calle San Sebastián de la Urbanización Torrimar de Guaynabo, Puerto Rico.

El frente de la casa de los apelantes da para la Avenida Ramírez de Arellano donde está prohibido el estacionamiento de vehículos. Los apelantes y sus hijos no tenían suficiente espacio en su casa para guardar el número de vehículos que poseían por lo que acostumbraban a estacionar algunos vehículos en las calles San Sebastián y Alhambra de dicha urbanización.

El 23 de octubre de 1990, de conformidad con la Ley Núm. 21 de 20 de mayo de 1987, se constituyó la Asociación de Residentes de Torrimar, Inc. (la Asociación), con el fin de controlar el acceso a la urbanización por razones de seguridad. Los apelantes no presentaron oposición al control de acceso. El control de acceso fue aprobado por el alcalde de Guaynabo el 8 de mayo de 1992. El portón que se erigió con ese fin se construyó en la calle San Sebastián a cierta distancia de la esquina de esa calle con la Avenida Ramírez de Arellano, de tal manera que la casa de los apelantes quedó excluida del área de acceso restringido. Para llegar a su casa los apelantes no tienen que pasar por dicho portón. Sin embargo, dicho portón en sí ocupa un área que antes podía ser utilizada para estacionar autos además de restringir el acceso a otras calles.

Luego de establecido el área de acceso restringido, los apelantes intentaron continuar estacionando algunos de sus automóviles en las mismas calles en que anteriormente lo hacían pero dentro del área restringida. La Asociación se lo permitió por un tiempo, pero en febrero de 1993, la Asociación tomó la decisión de no permitirle el acceso a los apelantes y denegó una solicitud para que se les aceptara como miembros de la Asociación y se le entregaran calcomanías y operadores electrónicos para facilitar el acceso.

Ante dicha negativa los apelantes instaron un pleito con el propósito de obtener las calcomanías y los operadores electrónicos (beepers) para que los autos de éstos tuvieran acceso al área controlada y para que se les permitiera ser miembros de la Asociación. ■ Luego del trámite pertinente mediante sentencia de 15 de diciembre de 1994 el tribunal apelado desestimó la demanda al declarar con lugar una moción de desestimación *("non suit")* a base de la Regla 39.2(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III. Determinó dicho tribunal que los apelantes, al no residir dentro del área restringida, no tenían derecho a ser miembros de la Asociación ni tenían derecho a los operadores electrónicos.

# II

Inconformes con dicha sentencia los apelantes instaron el presente recurso y le imputaron al tribunal la comisión de los siguientes errores:

*"A. Al determinar que la residencia de los demandantes está excluida del área de acceso controlado en Torrimar autorizada por Resolución del Gobierno Municipal de Guaynabo el 8 de mayo de 1992; por ser esta determinación contraria a la prueba desfilada.*

*B. Al determinar que los demandantes conocían la situación y diseño de los portones de acceso con anterioridad a la aprobación de dicha Resolución; por no estar esta determinación sostenida por la prueba desfilada.*

*C. Al concluir que no son de aplicación al caso de autos las normas y directrices establecidas por nuestro Tribunal Supremo en la opinión de Caquías Mendoza v. Asociación de Residentes, 93 J.T.S. 127, relacionadas con la Ley Núm. 21 del 20 de mayo de 1987, en especial su sección 15 (23 L.P.R.A. 64g).*

*D. Al no determinar la existencia de una relación contractual entre la Asociación y los demandantes; violando así las disposiciones de los Artículos 1044, 1208 y 1210 del Código Civil (31 L.P.R.A. 2994, 3373 y 3375).*

*E. Al no dar crédito a las declaraciones de los demandantes en el sentido de que se les había prometido la entrega de operadores electrónicos y calcomanías; violándose así las reglas 10, 38 y 44*

*de las de Evidencia en vigor.*

*F. Al no declarar con lugar la Moción de Sentencia Sumaria de los demandantes y acoger en su lugar la moción de desestimación de la demanda bajo la Regla 39.2 de las de Procedimiento Civil; en violación de la jurisprudencia que interpreta esta regla y del texto claro de la Regla 36 de las de Procedimiento Civil y su jurisprudencia interpretativa."*

La Ley Núm. 21 de 20 de mayo de 1987, según enmendada, autoriza a los municipios a otorgar autorizaciones y permisos para el control del tráfico de vehículos de motor y del uso público de las vías públicas en urbanizaciones y comunidades residenciales, públicas o privadas. Establece dicha ley, como condición para conceder el control de acceso, que ninguna de las calles de la comunidad a restringir el acceso se use para la entrada o salida a otra calle, urbanización o comunidad que no haya solicitado el control de acceso. En casos en que la comunidad tenga vías públicas que se usen como medios de entrada o salida a otras comunidades, se puede conceder el permiso de control de acceso si se le garantiza a los dueños y residentes de tal comunidad los medios adecuados y necesarios de acceso a su comunidad.

A los fines de solicitar permiso de control de acceso se requiere que las urbanizaciones, calles o comunidades tengan consejo, junta o asociación de residentes debidamente organizada y registrada en el Departamento de Estado como institución sin fines de lucro y que la solicitud de autorización sea adoptada por los menos por 3/4 partes de los propietarios de las viviendas allí establecidas.

La Ley Núm. 21, *supra*, concede a la Junta de Planificación facultad para adoptar los reglamentos que regirán el otorgamiento de los permisos de control de acceso. La Sec. 3.02 del Reglamento de Planificación de Control de Tránsito y Uso Público de Calle Locales (Reglamento de Planificación Núm. 20) dispone que el *control de acceso no debe perjudicar a otras comunidades.* Entre los perjuicios que puede provocar un control de acceso la Sec. 3.02, *supra,* enumera los siguientes: que se entorpezca el uso público de cualquier facilidad del gobierno estatal o municipal; y que imposibilite o dificulte a residentes externos a la comunidad a recibir servicios de instituciones privadas, como escuelas, iglesias, hospitales, etc.

La Sec. 5.03, *supra,* establece como requisito para una solicitud de control de acceso que se garantice dicho acceso por igual a todos los residentes de la comunidad, incluyendo a los que no favorecen el establecimiento de los controles. La Sec. 5.0, *supra,* ordena al municipio establecer las condiciones para el control de acceso.

La Sec. 3.03, *supra,* ordena que se establezca un área de espera dependiendo del número de unidades de vivienda dentro de la comunidad controlada. Mientras mayor sea el número de viviendas en la comunidad controlada, mayor también será el área de espera y la distancia del portón del sistema de control a la calle o avenida desde donde se tenga acceso.

Según la Sec. 7.01, *supra,* tendrán que contribuir con cuotas para establecer y mantener el control de acceso los propietarios de las fincas en las que se haya inscrito la autorización. Sec. 8 Ley 21, 23 L.P.R.A. sec. 64d-1.

La Sec. 11.01 del Reglamento de Planificación Núm. 20 salvaguarda el derecho de acceso a los proveedores de servicios públicos, tales como policías, bomberos, carteros, empleados de servicios de agua, energía eléctrica, teléfono, etc. y toda persona que un residente haya expresado su interés en recibirlo en el hogar.

### III

Luego de examinar la legislación y reglamentación pertinente, pasemos a discutir los planteamientos de error.

Los señalamientos de error A, B, D y E cuestionan conclusiones del tribunal sobre los siguientes hechos: que la residencia de los apelantes está fuera del área controlada, que los apelantes conocían la localización y diseño de los portones de acceso antes de que se aprobara la resolución autorizando el establecimiento del control, que no se estableció una relación contractual entre la Asociación y los

apelantes y al no dar crédito a la alegación de los apelantes de que se le prometieron operadores electrónicos y calcomanías.

En relación con los señalamientos de error A y B, del examen de la transcripción de la prueba se desprende que las referidas conclusiones sobre hechos están sostenidas por la evidencia desfilada en el juicio. En ausencia de pasión, prejuicio, parcialidad o error manifiesto, no intervendremos con la apreciación que de la prueba desfilada haya hecho el tribunal apelado. *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8 (1987). Concluimos, por lo tanto, que no se cometieron los errores mencionados en los señalamientos de error A y B. En relación con los señalamientos de error D y E, el tribunal no dio credibilidad a los testimonios de los apelantes con respecto a la alegada relación contractual y promesa de entrega de calcomanías, etc. Corresponde al juez de instancia, en su función de juzgador de los hechos, determinar y decidir qué credibilidad merecía la prueba. En ausencia de demostración de que el tribunal abusó de su discreción al denegar credibilidad a dicha prueba no alteraremos su dictamen.

En lo que se refiere al señalamiento de error F, al no haber acogido el tribunal apelado una moción de sentencia sumaria presentada por los apelantes, entendemos que se trata de un señalamiento inmeritorio. Es obvio que las bases factuales en apoyo de la reclamación de los apelantes estaban en disputa. No procedía, entonces, que se dictara sentencia sumaria según lo solicitaron los apelantes.

En el señalamiento de error C el tribunal apelado no aplicó las normas establecidas en *Caquías Mendoza v. Asoc. de Residentes de Mansiones de Río Piedras*, Op. de 25 de agosto de 1993, **93 J.T.S. 127**, relacionadas con la Ley Núm. 21, en especial su Sec. 15, 23 L.P.R.A. 64g, la cual garantiza acceso en igualdad de condiciones a los propietarios o residentes que no están obligados a pagar cuotas por no haber autorizado expresamente el sistema. El tribunal *a quo* determinó que la opinión de *Caquías Mendoza v. Asoc. de Residentes de Mansiones de Río Piedras, supra*, no beneficia a los apelantes, ya que la misma se refería al derecho de acceso de los residentes en el área restringida que se oponían al control de acceso. Al no quedar la casa de los apelantes dentro del área de acceso controlado, el tribunal concluyó en el caso que nos ocupa que los mismos no tenían derecho a calcomanías, operadores electrónicos ni a ser miembros de la Asociación. Si consideramos como limitada la reclamación de los apelantes a los aspectos mencionados, tendríamos que coincidir con el dictamen del tribunal apelado. Sin embargo, entendemos que el tribunal concibió la reclamación de los apelantes de una manera muy restringida. Veamos.

Aparte del derecho a ser miembros de la Asociación y a obtener calcomanías y operadores electrónicos, la reclamación de los mismos tenía como objetivo lograr estacionar sus automóviles en el área de acceso controlado. Es decir, con independencia de los métodos utilizados para facilitar ese acceso y del derecho a ser miembro de la Asociación, la solicitud de los apelantes se reduce a que se les permita hacer uso de unas facilidades públicas (las calles) como personas perjudicadas por el control de acceso o como la de cualquier otro ciudadano. El tribunal apelado incidió al desestimar la demanda en violación de la norma que le obliga a considerar si a la luz de la situación más favorable para el reclamante la misma es suficiente para contener una reclamación válida. Solamente procede la desestimación de la demanda cuando se desprenda con toda certeza que no se tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan probarse en apoyo de su reclamación. *Reyes v. Sucn. Sánchez Soto*, 98 D.P.R. 305 (1970); *Boulón v. Pérez*, 70 D.P.R. 988 (1950).

En *Caquías Mendoza v. Asoc. de Residentes de Mansiones de Río Piedras, supra*, el Tribunal Supremo tuvo oportunidad de pronunciarse sobre la naturaleza pública de las calles. Sobre este aspecto, el Tribunal Supremo dice lo siguiente:

*"Apuntalamos primeramente que de ordinario el permiso que otorga un municipio a una asociación de residentes para controlar el acceso a las calles residenciales de su urbanización, debe interpretarse e implantarse de conformidad con la naturaleza pública de esas vías. Por lo tanto, de acuerdo con el esquema legal aplicable, su uso generalmente no puede hacerse indebidamente oneroso. Toda norma de control de acceso debe ser razonable a la luz de las particularidades de la urbanización en que se vaya a implantar.*

*Bajo el esquema vigente, recae sobre cada municipio la responsabilidad de examinar cuidadosa-*

mente la propuesta de control de acceso sometida para su aprobación por una asociación o consejo de residentes. Al realizar ese examen, el municipio deberá evaluar, no sólo las estructuras físicas del sistema propuesto, sino también la manera en que la entidad solicitante se propone a operar el mismo. **Su escrutinio no debe ser uno liviano, ya que persigue asegurar que el sistema propuesto no transgreda los derechos que nuestro ordenamiento le ha conferido a todas las partes afectadas por la medida.**

A esos fines, el municipio tiene la facultad, así como el deber, de establecer las condiciones y restricciones que estime necesarias para armonizar los intereses en cuestión. Sec. 3, Ley Núm. 21, según enmendada, 32 L.P.R.A. sec. 64b. Concedido el permiso, recae sobre la asociación de residentes la obligación de utilizar el privilegio concedido conforme a las exigencias legales aplicables." (Enfasis nuestro.)

Durante la discusión en el Senado de Puerto Rico del P. del S. 1200, enmendatorio de la Ley Núm. 21, *supra*, el Senador Fernando Martín (P.I.P.) expresó sobre *"privatización"* de calles lo siguiente:

*"Pero no nos engañemos, **el efecto jurídico de esto no es, ni podría ser, es que no podría ser el de convertir una calle pública en Puerto Rico en una calle que es para uso exclusivo de los residentes, para el cual tengan el poder legal de impedir, de impedir el acceso de nadie.** Cuando la ley original habla otra vez ambiguamente de que no se puede prohibir el acceso a iglesias, facilidades, parque, un parque y una calle no tienen jurídicamente naturaleza distinta, son ambas una tan pública como la otra. Proveen al ciudadano una facilidad tan una como la otra; no puede ser que yo puedo ir a la cancha de baloncesto a tirar canasto, pero si voy a la cancha de baloncesto a mirar el canasto se me prohiba el acceso. **Así es que legalmente el día en que quiera permitir que una urbanización en efecto se convierta en un condominio, es decir, que pueda legalmente decir, 'el no vive aquí no puede entrar, eso requiere una transformación jurídica mucho más compleja de la que está envuelta en esta ley.** Y además, supondría que los vecinos se tendrían, primero que adquirir las facilidades públicas entre ellas las calles. Y tendrían en su momento también que hacerse cargo de su reparación. Yo presumo que el País no está listo para esto, esto haría quebrar a cualquier asociación de vecinos, si se tuvieran que imponer el comprar la calle. Pero por otro lado tampoco podemos levantar falsas ilusiones sobre lo que estamos haciendo. Repito, en ese sentido las preguntas del senador Ramos me parecen acertadas. Nadie en Puerto Rico, no hay ley ésta, ni la anterior, que impida jurídicamente, no digo yo en términos prácticos, uno no vive ahí y ve un guardia, una barrera, se va por otro sitio. **Pero nada que jurídicamente impida que yo transite por una calle pública de Puerto Rico sin tener que proveerle explicación a nadie mientras sea una calle pública.** Y digo esto, en primer lugar, porque es la verdad. Y en segundo lugar, para que aquellos que piensen que esta legislación debe ir más lejos que sepan que habría que hacer enmiendas más profundas."* (Enfasis nuestro.) *Diario de Sesiones Procedimiento y Debate de la Asamblea Legislativa.* Vol. XLIV, núm. 19, págs. 373-374.

El Profesor Raúl Serrano Geyls, expresándose sobre el mismo asunto, dice:

*"**Recuérdese de entrada que lo que se pretende cerrar son calles y parques públicos.** Esos son lugares, como ha dicho el Tribunal Supremo de Estados Unidos, que el Estado 'retiene en fideicomiso para el uso del público' y que desde tiempo inmemorial son los sitios preferidos para la comunicación pública e interpersonal. **El Estado no puede mantener el carácter público de esos lugares y a la vez entregarles su control a unas personas privadas para que ellas excluyan al público de su uso.** Es también de muy dudosa constitucionalidad que el Estado utilice dinero público para reparar calles y parques de los cuales se excluye al público y que benefician principalmente a ciertas personas privadas."* (Enfasis nuestro.) Comunicación Oficina Servicios Legales, pág. 3.

En resumen, concluimos que el tribunal *a quo* no erró al denegar la reclamación de los apelantes, concebida ésta como una limitada a que se le admita como miembro de la Asociación y se le entreguen calcomanías y operadores electrónicos. Sin embargo, entendemos que el tribunal no evaluó la reclamación de los apelantes en todos sus aspectos.

La Regla 43.6 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que toda sentencia *"concederá el remedio a que tenga derecho cuyo favor se dicte, aun cuando éste no haya solicitado tal remedio en*

*sus alegaciones".* Véanse, además, *Sánchez v. Eastern Air Lines, Inc.,* 114 D.P.R. 691, 694-95 (1983); y *Santiago Cruz v. Hernández Andino,* 91 D.P.R. 709, 711-13 (1965).

Sopesando la naturaleza pública de las calles envueltas, los propósitos de seguridad que motivaron la aprobación de la Ley Núm. 21, el propósito del legislador de que los sistemas de control de acceso se establezcan minimizando los inconvenientes que éstos crean a las personas afectadas y cualquier otra consideración, el tribunal debió evaluar la solicitud de los apelantes, de que se le permitiera hacer uso de unas facilidades públicas como personas perjudicadas por el control de acceso o como la de cualquier otro ciudadano, con independencia de sus reclamos de calcomanías, operadores electrónicos y de que se le acepte como miembro de la Asociación. El tribunal sentenciador debió reconocer el derecho que tienen los apelantes de utilizar las calles de la Urbanización Torrimar comprendidas en el área de control de acceso para estacionar sus automóviles o para cualquier otro fin legítimo.

Claro está, habida cuenta de que la sentencia apelada fue dictada en virtud de una moción de desestimación *("non suit")* bajo la Regla 39.2(c) de Procedimiento Civil, *supra,* y que la parte apelada no ha tenido aún la oportunidad de presentar su prueba, si alguna, ante el tribunal sentenciador, procede que devolvamos el caso para la continuación de la vista en su fondo de manera que dicha parte tenga la oportunidad de presentar su prueba. A los fines de viabilizar lo anterior, el tribunal sentenciador deberá emitir una resolución dirigida a la parte apelada para que en el plazo de diez días informe si interesa presentar prueba sobre la única cuestión que queda pendiente de adjudicación final y sobre la cual hemos dispuesto anteriormente en este recurso. De informarse por la parte apelada que no cuenta con prueba adicional, el tribunal *a quo* procederá a dictar sentencia interdictal a favor de la parte apelante conforme a lo aquí resuelto. En caso de ser necesaria la continuación de los procedimientos mediante vista evidenciaria, dicha prueba deberá ser evaluada y el derecho deberá ser aplicado conforme a lo aquí resuelto.

Finalmente, tratándose de una acción en la cual se solicita un remedio de naturaleza interdictal, el tribunal sentenciador procurará que los procedimientos se lleven a cabo con la celeridad que la ley requiere.

## IV

Por los fundamentos expuestos, se revoca la sentencia apelada y se ordena la continuación de los procedimientos conforme lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIO 97 DTA 135

**1.** Durante la vista oral celebrada ante nosotros el 17 de enero de 1997, la representación legal de los apelados informó que el interés de éstos era estacionar dos automóviles dentro del área de acceso restringido, pues tampoco podían estacionar en la Avenida Ramírez de Arellano. Interpretamos la reclamación de los apelantes como limitada a que se les permita entrar para estacionar sus automóviles.