ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| CARMIÑA ACEVEDO VÉLEZ, WALDEMAR ACEVEDO VÉLEZ, IRIS NELLY ACEVEDO VÉLEZ, WALTER ACEVEDO VÉLEZ, SONIA ACEVEDO VÉLEZ<br><br>Parte Recurrida<br><br>Vs.<br><br>LILIANA ACEVEDO VÉLEZ,<br><br>**AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO** Y ASEGURADORA YYZ<br><br>Parte Peticionaria | KLCE202400340 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Utuado<br><br>Caso Núm. AD2020CV00078 consolidado con PO2021CV00352<br><br>Sobre: Expropiación Forzosa a la Inversa |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez

Rivera Pérez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de abril de 2023.

Comparece ante nos el Gobierno de Puerto Rico (en adelante, el Estado o parte peticionaria), representado por la Oficina del Procurador General de Puerto Rico, y nos solicita que revoquemos la *Resolución* emitida y notificada el 13 de noviembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Utuado (en adelante, TPI o foro primario). Mediante dicha *Resolución,* el TPI declaró No Ha Lugar la solicitud de desestimación presentada por el Estado.

Por los fundamentos que expondremos, se expide el auto de *certiorari* y se revoca la *Resolución* recurrida.

**I.**

El 6 de julio de 2020, las Sras. Carmiña e Iris Nelly ambas de apellidos Acevedo Vélez y los Sres. Walter y Waldemar ambos de

apellidos Acevedo Vélez presentaron en el caso número **AD2020CV00078** una *Demanda* de expropiación forzosa a la inversa (en adelante, los recurridos) en contra de las Sras. Sonia y Liliana Acevedo Vélez, la Autoridad de Carreteras y Transportación de Puerto Rico (en adelante, ACT) y el Estado.[1] Luego de que se emplazara a la Sra. Liliana Acevedo y a la ACT y de que esta última presentara su *Contestación a Demanda,*[2] el 9 de diciembre de 2020, notificada el 14 de diciembre de 2020, el foro primario dictó *Sentencia* desestimando la demanda contra todas las partes por falta de emplazamiento al Estado, quien era parte indispensable; y ordenó el cierre y archivo sin perjuicio del caso.[3]

Así las cosas, el 17 de febrero de 2021, la parte aquí recurrida presentó nuevamente una *Demanda* en un segundo caso (**PO2021CV00352**) sobre expropiación forzosa a la inversa en contra de las Sras. Sonia y Liliana Acevedo Vélez, el Estado, la ACT y las Aseguradoras XYZ.[4] Alegó que la ACT realizó el proyecto AC-100065 (PR Puente sobre el Río Grande de Arecibo y P.R. 123 de Adjuntas) y que la construcción de la carretera 123 había ocupado su propiedad cita en la carretera 123 intersección con la carretera #10, KM. 37.6, Adjuntas, Puerto Rico, haciéndola inservible para su uso y había creado una condición peligrosa de tal magnitud que le había privado de su derecho de propiedad y pleno uso y disfrute de la misma.[5] Además, alegó que ACT había expropiado su propiedad sin pagar la justa compensación a la que tenía derecho.[6] En la alternativa, alegó que, del proyecto AC-100065 no pertenecer a la ACT, el Estado era el responsable de los hechos alegados en la

---

[1] Anejo VII del Apéndice del *Certiorari*, a las págs. 33-34. Este fue el número de caso AD2020CV00078.

[2] Anejo X del Apéndice del *Certiorari*, a las págs. 46-49.

[3] Anejo XII del Apéndice del *Certiorari*, a las págs. 53-54.

[4] Anejo XV del Apéndice del *Certiorari*, a las págs. 76-78. Este es el número de caso PO2021CV00352.

[5] *Id.*

[6] *Id.*

demanda[7]. Por último, solicitó ser compensada con una suma no menor de $250,000.00, más los intereses correspondientes, contados a partir de la fecha en que tuvo que desalojar la propiedad.[8] Al día siguiente, los recurridos presentaron *Demanda Enmendada.*[9]

El 3 de marzo de 2021, los recurridos, luego de solicitar reconsideración, la cual le fue denegada, acudieron ante esta Curia del dictamen final en el caso número **AD2020CV00078** mediante el recurso de apelación **KLAN202100128**. Luego de los trámites correspondientes, el 14 de septiembre de 2021, un panel hermano dispuso del recurso y dictó *Sentencia.*[10] En específico, expresó lo siguiente:

> "[…]
>
> Iniciamos por subrayar que la ACT es una corporación pública con capacidad para demandar y ser demanda, lo que supone que ostenta una personalidad jurídica separada del ELA. A tono con esto, en su contestación a demanda la ACT admitió ser la agencia encargada del proyecto de construcción y haber realizado las expropiaciones de los terrenos a ser ocupados por dicha construcción. Además, del expediente surge que la ACT fue la entidad expropiante, específicamente, quien tramitó la declaración de adquisición y consignó la justa compensación. Observado lo cual, corresponde resaltar que la causa de acción instada por los apelantes está anclada en la sola solicitud de justa compensación por la alegada expropiación de uno de los terrenos afectados por las referidas expropiaciones del proyecto a cuyo cargo está la ACT.
>
> De lo anterior se sigue que **el único remedio que aquí se reclama es proveer la justa compensación correspondiente por causa de la expropiación forzosa realizada**. Según lo dispone la Ley Orgánica de la ACT, en este caso el referido remedio solo puede ser provisto por la ACT, quien: (1) tiene el poder de expropiación y, (2) es responsable del proyecto en el cual está predicada la demanda ante nuestra consideración. Por tanto, quien único pudiera resultar afectado por el dictamen que se emita es la ACT.
>
> Por último, según adelantamos, del expediente se

---

[7] *Id.*
[8] *Id.*
[9] Anejo XVI del Apéndice del *Certiorari*, a las págs. 79-81. La *Demanda Enmendada* fue presentada a los únicos efectos de aclarar que la Sra. Sonia Vélez Acevedo debía constar como demandante y no como demandada.
[10] Anejo XVIII del Apéndice del *Certiorari*, a las págs. 86-98.

desprende que la sola razón por la cual la parte apelada insiste en la acumulación del ELA es porque esta "**pudiera** tener intereses en la propiedad inmueble objeto de la misma." (Énfasis nuestro). Sobre esto ya matizamos en la exposición de derecho que al determinar si una parte es *indispensable*, debemos hacer un juicio valorativo sobre los intereses que puede tener dicha parte en el pleito, pero, "**no se trata de cualquier interés en el pleito, sino que tiene que ser real e inmediato y no puede tratarse de meras especulaciones o de un interés futuro**". (Cita suprimida) En este caso, de los argumentos de la parte apelada precisamente se desprende que el ELA no tiene ningún interés real ni inmediato en el pleito, sino que son meras especulaciones de un interés que pudiera surgir en el futuro". (Énfasis en el original)

De conformidad a lo dispuesto en el caso **KLAN202100128**, esta Curia modificó la *Sentencia* apelada en el caso **AD2020CV00078** a los efectos de que la desestimación de la causa de acción fuera únicamente contra el Estado, más no sobre la acción interpuesta en contra de las demás partes debidamente emplazadas y devolvió el caso al foro primario para la continuación de los procedimientos cónsono con lo anteriormente dispuesto.

Así las cosas, el 24 de marzo de 2021, la ACT en el caso **PO2021CV00352** presentó su *Contestación a la Demanda Enmendada.*[11] En lo pertinente, la ACT expuso que:

"[…]

6. En cuanto a la alegación número siete (7) se acepta la realización del proyecto por parte de la compareciente ACT.

7. En cuanto a la alegación número ocho (8) se niega por no contar con elementos ni información suficiente que permita formar una opinión en cuanto a la veracidad de lo alegado. Para la construcción del proyecto de referencia la ACT realizó las expropiaciones de los terrenos a ser ocupados por la construcción. Se niega toda alegación contra la ACT en cuando a la alegada sobre haber creado cierta condición de peligrosidad, que priven a los ciudadanos de su derecho propietario y/o el uso y disfrute de sus propiedades.

[…]".

---

[11] Anejo XIX del Apéndice del *Certiorari*, a las págs. 99-102.

El 29 de abril de 2021, el Estado, en el caso de referencia, presentó *Moción en Solicitud de Desestimación* al amparo de la Regla 10.2 de Procedimiento Civil, *infra*, en la cual arguyó que de las alegaciones de la demanda surgía que la ACT era la responsable de los hechos por los cuales se estaba demandando y que, por lo tanto, no existían alegaciones plausibles en su contra.[12]  Al día siguiente, los recurridos presentaron *Réplica a "Moción en Solicitud (Sic) de Desestimación"*, en la cual alegaron que el Estado en su solicitud de desestimación no había expresado si tenía o no jurisdicción sobre el Proyecto AC-100065, aspecto esencial para determinar si el Estado era parte indispensable en el pleito.[13]

El 18 de mayo de 2021, notificada al día siguiente, el TPI decretó la paralización de los procedimientos a nivel de instancia en el caso número **PO2021CV00352** en atención a que aún se encontraba activo el caso **AD2020CV00078** a nivel a apelativo. Dispuso que la continuación de los procedimientos estaría condicionada a la determinación del foro revisor y que no se estaría evaluando por el momento la solicitud de desestimación y la objeción a la misma.[14]

Luego de varios incidentes procesales, el 23 de enero de 2023, la ACT presentó una *Solicitud de Desestimación,* mediante la cual solicitó la desestimación del caso número **PO2021CV00352** por tratarse de la misma reclamación entre las partes del caso número **AD2020CV00078**.[15]

En síntesis, expuso que: (1) el caso **PO2021CV00352** se presentó después de que se desestimara sin perjuicio el caso **AD2020CV00078**; (2) la parte demandante presentó un *Recurso de*

---

[12] Anejo XX del Apéndice del *Certiorari*, a las págs. 103-106.
[13] Anejo XXI del Apéndice del *Certiorari*, a las págs. 107-113.
[14] Véase, la Entrada Núm. 43 del expediente digital del Caso Núm. PO2021CV00352 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[15] Anejo XXII del Apéndice del *Certiorari*, a las págs. 114-115.

*Apelación* donde recurrió de la sentencia dictada en el caso **AD2020CV00078**; (3) que el foro primario había paralizado los procedimientos mediante la *Resolución* de 18 de mayo de 2021 y determinó que la continuación de los procedimientos estaría sujeta a la determinación de los tribunales revisores en el caso **AD2020CV00078**. Además, alegó que el caso **AD2020CV00078** fue resuelto por el Tribunal de Apelaciones y devuelto al TPI para la continuación de los procedimientos. Finalmente, solicitó que se desestimara el caso **PO2021CV00352** por constituir duplicidad de pleitos al contener las mismas partes y controversias que el **AD2020CV00078**.

Ese mismo día, el TPI le concedió a la parte recurrida hasta el 13 de febrero de 2023 para mostrar causa por lo cual no se debía ordenar el archivo del caso número **PO2021CV00352**.[16] En cumplimiento con lo ordenado, los recurridos incoaron *Réplica a "Solicitud de Desestimación",* en la cual arguyeron que lo que procedía era la consolidación de los casos.[17] Por su parte, el 6 de marzo de 2023, ACT presentó *Escrito en Cumplimiento de Orden (SUMAC 62) y Réplica a la Oposición Presentada por la Parte Demandante (SUMAC 61),* mediante la cual alegó que en "estos dos casos a pesar de tener idénticas controversias, no tiene idénticas partes".[18]

El 13 de junio de 2023, notificada el 20 de junio de 2023, el foro primario emitió *Resolución y Orden,* mediante la cual declaró No Ha Lugar la solicitud de desestimación presentada por ACT y, en consecuencia, ordenó la consolidación de los casos **PO2021CV00352** y **AD2020CV00078**. Además, le ordenó a la representación legal del Estado presentar una comparecencia

---

[16] Véase, la Entrada Núm. 60 del expediente digital del Caso Núm. PO2021CV00352 en SUMAC.

[17] Anejo XXIII del Apéndice del *Certiorari*, a las págs. 116-119.

[18] Véase, la Entrada Núm. 63 del expediente digital del Caso Núm. PO2021CV00352 en SUMAC.

especial en el caso número **AD2020CV00078** en el término de diez (10) días de forma que el sistema generara las notificaciones correspondientes.[19]

Luego de trámites procesales ulteriores, el 29 de septiembre de 2023, el Estado, sin someterse a la jurisdicción del tribunal, presentó su *Comparecencia Especial*, en la cual adujo que en el caso **AD2020CV00078** esta Curia había dictado *Sentencia* en el caso **KLAN202100128**, en la cual había indicado que en "este caso el referido remedio solo puede ser provisto por la ACT, quien: (1) tiene el poder de expropiación y, (2) es responsable del proyecto en el cual está predicada la demanda ante nuestra consideración. Por tanto, quien único pudiera resultar afectado por el dictamen que se emita es la ACT".  Por tanto, solicitó del foro primario la desestimación de la demanda instada en contra del Estado en el caso **PO2021CV00352**.

El 13 de noviembre de 2023, el foro primario emitió y notificó la *Resolución* recurrida, mediante la cual declaró No Ha Lugar la solicitud de desestimación presentada por el Estado.[20]  En el dictamen, el TPI concluyó y resolvió lo siguiente:

> El Estado Libre Asociado (en adelante ELA), en su solicitud de desestimación, fundamenta su petición sobre el hecho de que la Autoridad de Carreteras y Transportación (en adelante ACT) tiene capacidad para demandar y ser demandada. Por razón de ello, expone que no viene llamada a responder por los actos y omisiones de dicha entidad.
>
> La posición de la parte codemandada Estado Libre Asociado parte de la premisa de que ha sido incluida como parte codemandada con el único propósito de que responda por los presuntos actos y omisiones de la ACT. Sin embargo, la Demanda, a la alegación número 10, expresa lo siguiente:
>
> "En la alternativa, del proyecto no pertenece a la ACT AC-100065, acumulado en la demanda se alega

---

[19] Véase, la Entrada Núm. 66 del expediente digital del Caso Núm. PO2021CV00352 en SUMAC.
[20] Anejo I del Apéndice del *Certiorari*, a las págs. 1-3.

que el Estado Libre Asociado es el responsable de los hechos consignados en la demanda". (Énfasis nuestro)

Esto es, la Demanda deja abierta la posibilidad de que el ELA responda por sus propias acciones y omisiones, de no pertenecer el proyecto a la ACT. Como bien señala la Parte Demandante, la parte codemandada ELA no ha expresado con certeza si tiene o no jurisdicción sobre la obra denominada como proyecto AC-100065.

Por los fundamentos previamente expuestos, se declara No Ha Lugar a la solicitud de desestimación. [...].

Inconforme, el Estado presentó el 21 de noviembre de 2023 *Reconsideración a Resolución*, en la que sostuvo que el foro primario erró al descartar todos los hechos que sustentaban resolver la desestimación a su favor cuando la ACT aceptó ser la responsable del Proyecto AC-100065.[21] El 13 de diciembre de 2023, la parte recurrida presentaron *Breve Réplica a Reconsideración del ELA a Denegatoria de Solicitud de Reconsideración.*[22] En su escrito, los recurridos alegaron que, por haberse esgrimido en la demanda original que el Estado y la ACT expropiaron el inmueble que nos concierne el foro judicial estaba impedido de desestimar el pleito a favor del Estado. El 3 de enero de 2024, el Estado replicó y el 24 de enero de 2024 los recurridos presentaron dúplica.[23]

El 21 de febrero de 2024, notificada al día siguiente, el TPI dictó *Resolución* declarando No Ha Lugar la solicitud de reconsideración presentada por el Estado.[24] En su Resolución, el TPI consignó lo siguiente:

Sin embargo, aunque no hay duda de la Autoridad de Carreteras y Transportación de Puerto Rico tiene capacidad jurídica para demandar y ser demandada, y expropiar terrenos; la controversia que nos ocupa trata de un procedimiento de expropiación forzosa a la inversa. [...] Por tanto, aunque la ACT aceptó haber realizado el proyecto ACT AC-100065 eso de por sí no es suficiente para entender que el ELA no haya afectado la propiedad en controversia ya sea por restricciones impuestas a la propiedad por razón de **alguna**

---

[21] Anejo II del Apéndice del *Certiorari*, a las págs. 4-10.
[22] Anejo III del Apéndice del *Certiorari*, a las págs. 11-18.
[23] Anejo IV y V del Apéndice del *Certiorari*, a las págs. 19-21 y 22-26.
[24] Anejo VI del Apéndice del *Certiorari*, a las págs. 27-32.

**reglamentación** o porque haya sido **afectada por alguna reserva o uso público**. En la etapa de los procedimientos en que nos encontramos el descubrimiento de prueba está recién iniciado. Cónsono con lo anterior, no procede la desestimación solicitada por el ELA toda vez que la demanda enmendada aduce una causa de acción contra dicha parte.

Ahora bien, sobre lo esbozado por ELA de que el Tribunal de Apelaciones había desestimado la demanda en su contra por no ser una parte indispensable, dicho foro en su análisis concluyó que la demanda podía continuar sin dicha parte ya que las alegaciones contra el ELA eran en la alternativa y que se podía proseguir la demanda contra ACT sin afectar un interés del ELA. No obstante, eso nada quita el hecho de que en el caso civil número PO2021CV00352 se demandó y emplazó al ELA conforme a derecho. Además, de las alegaciones de la demanda enmendada surge una causa de acción contra el ELA y que en esta etapa del proceso resulta imposible determinar si el ELA es responsable o no de la expropiación forzosa a la inversa". (Énfasis en el original.)

Aún inconformes, el Estado acudió ante nos el 21 de marzo de 2023, mediante *Certiorari Civil* y nos plantea la comisión del siguiente error:

Erró el Tribunal de Primera Instancia al no desestimar la *Demanda Enmendada* a tenor de la Regla 10.2 (5) de Procedimiento Civil a pesar de las alegaciones contra el Estado contenidas en esta son claramente insuficientes para justificar la concesión de un remedio a favor de los recurridos.

El 1 de abril de 2024, la parte recurrida presentó *Memorando en Oposición a Expedición de Auto de Certiorari*.

Así, contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

**A.**

El recurso de *certiorari* es "un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Véase, además, *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). En el

ámbito judicial, el concepto discreción "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". *IG Builders et al. v. BBVAPR*, supra, pág. 338. La discreción, "es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, supra, a la pág. 174.

En el caso particular del Tribunal de Apelaciones, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita los asuntos interlocutorios que podemos revisar mediante un recurso de *certiorari*, bajo el entendimiento de que estos pueden esperar hasta la conclusión del caso para ser revisados en apelación. *IG Builders et al. v. BBVAPR*, supra, pág. 337. Al respecto, la Regla 52.1 de Procedimiento Civil, *supra*, dispone específicamente que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 56 y 57, o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.* Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

A su vez, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que el Tribunal de Apelaciones deberá tomar en consideración al determinar si procede la expedición de un recurso de *certiorari* o de una orden de mostrar causa. Estos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*

La precitada regla mandata que, como foro apelativo, evaluemos si alguna de las instancias enumeradas anteriormente es de aplicación a la petición de *certiorari*. De alguna estar presente, podemos ejercer nuestra discreción e intervenir con el dictamen recurrido. Por el contrario, estaremos impedidos de expedir el auto, y por lo tanto deberá prevalecer la determinación del foro recurrido. Los criterios antes transcritos sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008).

De ordinario, los tribunales apelativos no debemos intervenir con las decisiones discrecionales de un Tribunal de Primera Instancia a menos que se demuestre que dicho foro incurrió en un

abuso de discreción, y que nuestra intervención evitaría un perjuicio sustancial. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013). En todo caso, el criterio rector al momento de evaluar si un tribunal ha abusado de su discreción es la razonabilidad de la determinación impugnada, y su fundamento en un sentido llano de justicia. *Id.,* págs. 434-435.

**B.**

La moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, *supra,* es aquella que formula el demandado antes de presentar su contestación a la demanda en la cual solicita que se desestime la demanda presentada en su contra. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428-429 (2008); *Colón v. Lotería*, 167 DPR 625, 649 (2006). Dicha Regla dispone, en lo pertinente, lo siguiente:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada: (1) Falta de jurisdicción sobre la materia; (2) Falta de jurisdicción sobre la persona; (3) Insuficiencia del emplazamiento; (4) Insuficiencia del diligenciamiento del emplazamiento; (5) Dejar de exponer una reclamación que justifique la concesión de un remedio; (6) Dejar de acumular una parte indispensable.

El Inciso (5) de la precitada Regla establece como fundamento para solicitar la desestimación, que la demanda no expone una reclamación que justifique la concesión de un remedio. En reiteradas ocasiones, se ha señalado que, al resolverse una moción de desestimación por este fundamento, el tribunal tomará como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas. *Eagle Sec. Police, Inc. v. Efrón Dorado, S.E.*, 211 DPR 70; *Casillas Carrasquillo v. ELA*, 209 DPR 240 (2022); *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261 (2021); *Conde Cruz v. Resto Rodríguez, et al.*, 205 DPR 1043, 1065 (2020); *Aut. Tierras v.*

*Moreno & Ruiz Dev. Corp.*, supra; *Colón v. Lotería*, supra; *Sánchez v. Aut. de los Puertos*, 153 DPR 559 (2001); *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497 (1994). Además, tales alegaciones deberán interpretarse conjuntamente, liberalmente y de la manera más favorable posible para la parte demandante. *Íd.*; *Dorante v. Wrangler of P.R.*, 145 DPR 408 (1998).

La demanda no deberá desestimarse a menos que se demuestre que el demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar. *Íd.*; *Reyes v. Sucn. Sánchez Soto*, 98 DPR 305, 309 (1970); *Boulon v. Pérez*, 70 DPR 988 (1950). Tampoco procede la desestimación, si la demanda es susceptible de ser enmendada. *Clemente v. Depto. de la Vivienda*, 114 DPR 763 (1983). En resumen, se debe considerar, "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida". *Pressure Vessels P.R. v. Empire Gas P.R.*, supra; *Unisys v. Ramallo Brothers*, 128 DPR 842 (1991).

Al evaluar una moción de desestimación bajo la Regla 10.2 (5) de Procedimiento Civil, *supra*, es necesario determinar si los hechos alegados en la demanda establecen de su faz una reclamación que sea plausible y que, como tal, justifique que el demandante tiene derecho al remedio que busca o, al menos, a parte de este. Si se determina que los hechos alegados "no cumple[n] con el estándar de plausibilidad, el tribunal debe desestimar la demanda". R. Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, Ed. LexisNexis, 2010, pág. 268. Véase, además, *Bell Atlantic Corp. v. Twombly*, 550 US 544 (2007), y *Ashcroft v. Iqbal*, 556 US 662 (2009). Lo que se busca con el análisis de plausibilidad es el "no permitir que una demanda insuficiente proceda bajo el pretexto de que con el descubrimiento de prueba pueden probarse las alegaciones conclusorias". *Íd.*

**c.**

Nuestra Constitución reconoce el derecho fundamental al disfrute de la propiedad. Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1. No obstante, este no es absoluto, pues cede, por ejemplo, ante el poder inherente que tiene el Estado para adquirir bienes privados mediante el procedimiento de la expropiación forzosa. *SLG Ortiz-Mateo v. ELA*, 211 DPR 772 (2023), citando a *Adm. Terrenos v. Ponce Bayland,* 207 DPR 586, 603 (2021).

Existen límites importantes al ejercicio de la facultad gubernamental del poder de expropiar. Nuestra Constitución establece que "no se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley". Art. II, Sec. 9, Const. ELA, LPRA, Tomo 1.

La obligación del Estado de pagar una justa compensación por la propiedad privada incautada se manifiesta en tres (3) formas: (1) mediante el ejercicio directo del poder de dominio eminente, al instar un recurso de expropiación; (2) por medio de su reglamentación, y (3) cuando ocurra una incautación de hecho que afecta sustancialmente el uso de la propiedad física. *Aut. Carreteras v. 8,554.741 M/C I,* 172 DPR 278, 292 (2007); *Velázquez Velázquez v. E.L.A.,* 135 DPR 84 (1994).

Se ha denominado "expropiación a la inversa" a la acción que el dueño de la propiedad inste contra el Estado para obtener la compensación a la cual tiene derecho. Los tribunales generalmente le aplican las mismas normas y principios que rigen la acción de expropiación iniciada por el Estado. *Id.*

Mediante la acción de expropiación a la inversa, "se garantiza el cumplimiento del Estado con las disposiciones constitucionales que establecen que nadie será privado de su propiedad sin un debido proceso de ley y sin haber mediado justa compensación".

*Amador Roberts et als. v. ELA,* 191 DPR 268, 279 (2014). Dicha acción es el remedio que tiene el dueño de una propiedad afectada u ocupada por una entidad del gobierno, que no ha seguido el trámite en ley para su adquisición. *Íd.* Instada la acción, el propietario deberá demostrar que el Estado ocupó o incautó su propiedad y litigará la existencia del uso público y la justa compensación, de la misma forma que se haría en un pleito de expropiación forzosa. *Íd.*

**D.**

En nuestro ordenamiento jurídico, el principio de cosa juzgada establece que las partes tienen que considerar los puntos discutidos como definitivamente resueltos, y no podrán volver nuevamente sobre los mismos. *Neca Mortg. Corp. v. A&W Dev. S.E.,* 137 DPR 860 (1995). Esta doctrina resulta valiosa y necesaria para la sana administración de la justicia, pues por un lado vela por el interés gubernamental de que se finalicen los pleitos, y por el otro, se interesa no someter a los ciudadanos a las molestias de tener que litigar dos (2) veces una misma causa. *Fonseca et al. v. Hosp. HIMA,* 184 DPR 281 (2012). Sobre esto último, la doctrina se fundamenta en el interés general de evitar que una parte sufra innecesariamente las molestias que conlleva someterse a un procedimiento judicial adicional, particularmente debido a los costos adicionales que supone para las partes y el tribunal volver a litigar un asunto ya resuelto por otro foro. *Martínez Díaz v. E.L.A.,* 182 DPR 580 (2011). Sin embargo, la aplicación de esta doctrina no procede de forma inflexible y automática cuando hacerlo derrotaría los fines de la justicia o las consideraciones de orden público. *Fonseca et al. v. Hosp. HIMA, supra.*

Para que se configure la defensa de cosa juzgada se tiene que cumplir con los requisitos siguientes: (1) una primera sentencia válida, la cual advino final y firme que adjudicó los hechos y resolvió

la controversia en los méritos; (2) las partes en ambos juicios deben ser las mismas; (3) era la misma controversia objeto en cada juicio; (4) que el remedio que se solicita sea análogo al que se pidió en el caso anterior; y, por último, (5) que las partes en ambos litigios comparezcan en la misma calidad. *Beníquez et al. v. Vargas et al.*, 184 DPR 210, 221-225 (2012).

De otra parte, la doctrina de la ley del caso tiene el propósito de que los tribunales no reexaminen asuntos que ya fueron considerados dentro de un mismo caso para así velar por un trámite ordenado expedito de litigios, así como promover la estabilidad y certeza del derecho. *Berkan et al. v. Mead Johnson Nutrition*, 204 DPR 183, 200-201 (2020). La jurisprudencia ha reiterado que los derechos y las obligaciones que han sido objeto de adjudicación en el ámbito judicial, mediante dictamen final y firme, constituyen "la ley del caso". *Íd.*; *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 606 (2000). Como regla general, las determinaciones que componen "la ley del caso" son aquellas cuestiones finales consideradas y decididas por el tribunal, las cuales, como regla general, obligan a los foros de instancia y apelativo que las haya dictado, si el caso vuelve ante su consideración. *Camacho Rivera v. Richard Mitchell, Inc.*, 202 DPR 34, 67 (2019).

Ahora bien, esta doctrina no es un mandato invariable, sino que recoge la costumbre deseable de que las controversias adjudicadas por un tribunal sean respetadas. *Cacho Pérez v. Hatton Gotay y otros*, 195 DPR 1, 9 (2016); *Mgmt. Adm. Servs. Corp. v. E.L.A.,* supra, a la pág. 607. "En situaciones excepcionales, si el caso vuelve ante la consideración del tribunal y este entiende que sus determinaciones previas son erróneas y pueden causar una grave injusticia, ese foro puede aplicar una norma de derecho distinta". *Íd.*

**III.**

En su recurso de *certiorari,* el Estado señala que erró el TPI "al no desestimar la *Demanda Enmendada* a tenor de la Regla 10.2 (5) de Procedimiento Civil a pesar de las alegaciones contra el Estado contenidas en esta son claramente insuficientes para justificar la concesión de un remedio a favor de los recurridos". Le asiste la razón al Estado. Veamos.

Según surge del tracto procesal previamente esgrimido, el Estado ya no es parte en el caso **AD2020CV00078**, por lo que solamente quedaba por resolver la solicitud de desestimación presentada por el ELA en el caso **PO2021CV00352** consolidado. Sin embargo, el Tribunal de Apelaciones en el caso **KLAN202100128** por el caso **AD2020CV00078**, el cual versa sobre las mismas partes y controversias del **PO2021CV00352**, expresó:

> en su contestación a demanda la ACT admitió ser la agencia encargada del proyecto de construcción y haber realizado las expropiaciones de los terrenos a ser ocupados por dicha construcción. Además, del expediente surge que la ACT fue la entidad expropiante, específicamente, quien tramitó la declaración de adquisición y consignó la justa compensación.

Este foro intermedio también expresó que "del expediente se desprende que la sola razón por la cual la parte apelada insiste en la acumulación del ELA es porque esta 'pudiera tener intereses en la propiedad inmueble objeto de la misma'". Por último, expresó que "[e]n este caso, de los argumentos de la parte apelada precisamente se desprende que el ELA no tiene ningún interés real ni inmediato en el pleito, sino que son meras especulaciones de un interés que pudiera surgir en el futuro".

En atención a ello, esta Curia dispuso en el caso **KLAN202100128** por el caso **AD2020CV00078** que el Estado no era parte indispensable, por lo que revocó la determinación de desestimación contra todas las partes y sostuvo únicamente la del Estado por falta de emplazamiento.

Es un hecho incontrovertido que, estando pendiente de revisión la Sentencia del caso **AD2020CV00078** ante el foro intermedio, las partes no esperaron la determinación final del caso y decidieron presentar un caso análogo bajo el número de caso **PO2021CV00352**.

Además, es importante señalar que los recurridos, en la *Demanda Enmendada* presentada en el caso número **PO2021CV00352**, en la alegación número 7, expresan que: "[…] el demandado, Autoridad De Carreteras Y Transportación, realizó el proyecto AC-100065 (PR 10 Puente sobre el río grande de Arecibo y P.R. 123 de Adjuntas)". La ACT en su *Contestación a Demanda Enmendada* expresó que: "[e]n cuanto a la alegación número siete (7) se acepta la realización del proyecto por parte de la compareciente ACT".  La parte aquí recurrida, en la alternativa, señala en su alegación número 10 de la Demanda Enmendada del caso número **PO2021CV00352** que: "[…], del proyecto no pertenece a la ACT AC-100065, acumulado en la demanda se alega que el Estado Libre Asociado es el responsable de los hechos consignados en la demanda".

Por tanto, no es al Estado a quien le pertenece el proyecto AC-100065, ya la Autoridad de Carreteras (ACT) ha aceptado que ese es su proyecto y que las expropiaciones le correspondían. Esto exactamente ocurrió en el caso **AD2020CV00078.**

Es importante reiterar que en el recurso de apelación **KLAN202100128,** mediante el cual se revisó la determinación de desestimación de la demanda en el caso **AD2020CV00078,** un panel hermano se pronunció sobre los asuntos nuevamente planteados de la siguiente manera:

"[…]
Iniciamos por subrayar que la ACT es una corporación pública con capacidad para demandar y ser demanda,

lo que supone que ostenta una personalidad jurídica separada del ELA. A tono con esto, en su contestación a demanda la ACT admitió ser la agencia encargada del proyecto de construcción y haber realizado las expropiaciones de los terrenos a ser ocupados por dicha construcción. Además, del expediente surge que la ACT fue la entidad expropiante, específicamente, quien tramitó la declaración de adquisición y consignó la justa compensación. Observado lo cual, corresponde resaltar que la causa de acción instada por los apelantes está anclada en la sola solicitud de justa compensación por la alegada expropiación de uno de los terrenos afectados por las referidas expropiaciones del proyecto a cuyo cargo está la ACT.

De lo anterior se sigue que **el único remedio que aquí se reclama es proveer la justa compensación correspondiente por causa de la expropiación forzosa realizada**. Según lo dispone la Ley Orgánica de la ACT, en este caso el referido remedio solo puede ser provisto por la ACT, quien: (1) tiene el poder de expropiación y, (2) es responsable del proyecto en el cual está predicada la demanda ante nuestra consideración. Por tanto, quien único pudiera resultar afectado por el dictamen que se emita es la ACT.

Por último, según adelantamos, del expediente se desprende que la sola razón por la cual la parte apelada insiste en la acumulación del ELA es porque esta "**pudiera** tener intereses en la propiedad inmueble objeto de la misma." (Énfasis nuestro). Sobre esto ya matizamos en la exposición de derecho que al determinar si una parte es *indispensable*, debemos hacer un juicio valorativo sobre los intereses que puede tener dicha parte en el pleito, pero, "**no se trata de cualquier interés en el pleito, sino que tiene que ser real e inmediato y no puede tratarse de meras especulaciones o de un interés futuro**". (Cita suprimida) En este caso, de los argumentos de la parte apelada precisamente se desprende que el ELA no tiene ningún interés real ni inmediato en el pleito, sino que son meras especulaciones de un interés que pudiera surgir en el futuro." (Énfasis en el original)

Debido a que existe esta determinación previa sobre asuntos similares entre las mismas partes y en la cual hay identidad de causa, en ánimo de promover la economía procesal y judicial, proteger a los litigantes contra lo que representa defenderse o probar sus reclamaciones en repetidas ocasiones, y al haber sido previamente adjudicado los planteamientos nuevamente esgrimidos en este segundo caso, no procede el que se continúe la causa de acción en contra el Estado.

**IV.**

Por los fundamentos anteriormente expuestos, se expide el auto de *certiorari*, se revoca la *Resolución* recurrida, se desestima la causa de acción contra el Estado y se ordena la continuación de los procedimientos cónsono con lo aquí dispuesto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones