Estado Libre Asociado de Puerto Rico
PANEL ESPECIAL

| HEATHER O'BRIEN<br><br>Apelante<br><br>v.<br><br>DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO, ET AL<br><br>Apelados | KLAN202400384 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm. SJ2023CV06753<br><br>Sobre:<br>SENTENCIA DECLARATORIA Y OTROS |

Panel integrado por su presidente el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de septiembre de 2024.

I.

El 15 de julio de 2014 el Departamento de Desarrollo Económico y Comercio de Puerto Rico (DDEC), concedió a la Sra. Heather O'Brien exención contributiva[1] bajo Ley Para Incentivar el Traslado de Individuos Inversionistas a Puerto Rico, Ley Núm. 22-2012.[2] Sin embargo, tras varios años incumpliendo su obligación de presentar los informes anuales, el decreto contributivo le fue revocado por el DDEC.

En desacuerdo con esta revocación, el 14 de julio de 2023, la señora O'Brien instó una *Demanda* sobre sentencia declaratoria en contra del director de la Oficina de Incentivos del DDEC. Expuso, en síntesis, que el 15 de junio de 2021, este envió un correo electrónico a la dirección imetheather@gmail.com con una misiva intitulada *Notice of Deficiency of Filing of Annual Report* fechada a 10 de junio de 2021, en la cual le requirió la presentación del informe omitido.

---

[1] Caso Núm. 14-22-S-126.
[2] 13 LPRA §10851 *et seq.*

Número Identificador

SEN2024_____

La Sra. O'Brien declaró bajo juramento que ella no recibió dicho correo electrónico. Añadió, que el DDEC tampoco envió la notificación del 10 de junio de 2021 a Compliance o a la Sra. Ruiz, a pesar de que dicha entidad era la encargada de presentar los informes de la señora O'Brien, y que su correo electrónico surgía de informes presentados previamente. Además, arguyó que tampoco recibió el correo electrónico del 20 de diciembre de 2021 donde se le informó que se le había revocado su decreto.

Sostuvo que el 10 de marzo de 2023 el Departamento de Hacienda le notificó, mediante un Aviso de Cambio en Contribución, que su decreto había sido revocado y como consecuencia de ello, existía una deficiencia en la contribución sobre ingresos para el año contributivo 2018. Posteriormente, el 21 de marzo de 2023, recibió un *Aviso de Cambio en Contribución* corregido por el Departamento de Hacienda. Según la señora O'Brien, fue a través de estas notificaciones que conoció de la revocación de su decreto y realizó gestiones para aclarar el estatus de su decreto. En ese proceso, tras el intercambio de varias comunicaciones, el DDEC le informó que el decreto había sido revocado en diciembre de 2021 debido a su incumplimiento con la radicación de informes anuales.

Ante ello, la señora O'Brien solicitó al Tribunal de Primera Instancia que, a través de una sentencia declaratoria, estableciera que: 1) ella no recibió una notificación de deficiencia por parte del DDEC el 15 de junio de 2021 como alega el DDEC; (2) el DDEC nunca le notificó del inicio de un procedimiento de revocación de decreto; (3) no se le brindó la oportunidad de una vista previo a la revocación del decreto y; (4) tampoco recibió una notificación por correo electrónico informándole que su decreto había sido revocado el 20 de diciembre de 2021 como alegó el DDEC.

El 10 de octubre de 2023, compareció el DDEC mediante una *Moción de Desestimación*. Basó la misma en que, la señora O'Brien

dejó de exponer una reclamación que justificara la concesión de un remedio, toda vez que el recurso de sentencia declaratoria no podía ser utilizado debido a la existencia de un procedimiento administrativo específico para atender el asunto en controversia. Asimismo, estableció que no existía incertidumbre jurídica en cuanto al recibo de notificación adecuada por parte del DDEC.[3] Ese mismo día, el Tribunal de Primera Instancia emitió una *Orden* para que se replicara la *Moción de Desestimación* en un término de veinte (20) días.

El 11 de octubre de 2023, la señora O'Brien presentó su *Oposición a Moción de Desestimación.* En síntesis, reiteró que no recibió la notificación de deficiencia ni de la orden de revocación de su decreto. No obstante, admitió que finalmente se enteró de lo

---

[3] En la referida moción, el DDEC anejó los siguientes documentos para establecer su posición:

1) *Certificación* con fecha del 25 de septiembre de 2023 emitida por la Oficina de Incentivos para Negocios de Puerto Rico del DDEC. (Apéndice del recurso, págs. 66-67).
2) *Tax Incentives Application.* (Apéndice del recurso, págs. 68-71).
3) Correo electrónico con fecha del **15 de junio de 2021** por el DDEC titulado: *Notice of Deficiency Act. 22- Heather O' Brien.* (Apéndice del recurso, pág. 72). El documento contiene un anejo titulado: *Notice of Deficiency of Filing Annual Report.* (Apéndice del recurso, pág. 73).
4) Correo electrónico con fecha del **20 de diciembre de 2021** titulado: *Heather O' Brien 14-22-S-126 – Order of Revocation.* (Apéndice del recurso, pág. 74). El documento contiene un anejo titulado: *Order of Revocation of Grant Tax Exemption.* (Apéndice del recurso, pág. 75). Este último documento, provee información sobre el procedimiento a seguir para impugnar la revocación de decreto.
5) El **21 de marzo de 2023**, la Lcda. Coralis Sosa Castellanos, en representación de la señora O' Brien, envió un correo electrónico al DDEC para indagar sobre el estatus del decreto. (Apéndice del recurso, pág. 80). Luego de un intercambio de varios correos electrónicos, el **27 de marzo de 2023**, el DDEC le informó a la Lcda. Sosa Castellanos que se le había enviado la notificación de deficiencia el 15 de junio de 2021 y la orden de revocación el 20 de diciembre de 2021. (Apéndice del recurso, pág. 78). Ese mismo día, la Lcda. Sosa Castellano preguntó a quien le fueron enviadas esas notificaciones. (Apéndice del recurso, pág. 77). Al otro día, el DDEC le respondió que se habían enviado al correo electrónico: imeheather@gmail.com. (Apéndice del recurso, pág. 77).
6) El **23 de marzo de 2023**, la Lcda. Sosa Castellanos envió otro correo electrónico al DDEC a través del cual indicó que la señora O' Brien no recibió notificación alguna sobre la revocación del decreto contributivo por parte de DDEC y solicitó la confirmación sobre la revocación de este. (Apéndice del recurso, págs. 81-82). Luego, el **28 de marzo de 2023** el Departamento de Compliance del DDEC le informó la señora O' Brien que la Orden de Revocación emitida el 20 de diciembre de 2021 se sostenía. (Apéndice del recurso, pág. 81).
7) *Certificación* con fecha del 25 de septiembre de 2023 emitida por la Oficina de Apelaciones Administrativas del Departamento de Hacienda. (Apéndice del recurso, pág. 90).

sucedido en marzo de 2023 por vía de una comunicación que le envió el Departamento de Hacienda. Adujo que existía una controversia fáctica entre las partes sobre el recibo de la notificación.

El 30 de octubre de 2023, el DDEC presentó una *Réplica a Oposición a Moción de Desestimación.* Esbozó que en este caso no había incertidumbre jurídica en cuanto a si la señora O' Brien recibió o no la Orden de Revocación, como se planteó en la *Demanda* y en la *Oposición,* sino, en qué fecha la recibió. Finalmente, reiteró su postura en torno a que ninguna de las alegaciones de la *Demanda* ni la declaración jurada que la acompañaba, rebatían los hechos pertinentes planteados en su moción dispositiva.

En una *Breve Dúplica* presentada e1 de noviembre de 2023, la señora O'Brien sostuvo que advino en conocimiento de la existencia de la resolución del DDEC en marzo de 2023. Por ello, no podía agotar el trámite administrativo correspondiente hasta que se determinara que no hubo una notificación de la resolución.

Así las cosas, el 25 de enero de 2024, la señora O'Brien presentó una *Moción Solicitando Inspección Ocular* para revisar el servidor del DDEC desde el cual se envió el correo electrónico del 20 de diciembre de 2021. El 26 de enero de 2024, el Tribunal de Primera Instancia le ordenó al DDEC que replicara a dicha moción en un término de veinte (20) días.

El 15 de febrero de 2024, el DDEC presentó *Moción en Cumplimiento de Orden y Oposición a "Moción Solicitando Inspección Ocular".* Adujo que la inspección solicitada era impertinente en esa etapa de los procedimientos y que resultaba imposible dado que, desde hace casi diez (10) años, el DDEC dejó de tener servidores físicos en el *Data Center.* En reacción a ello, el 20 de febrero de 2024, la señora O'Brien presentó una *Breve Réplica* en la que reiteró su petición. Añadió que no era necesaria la inspección física del equipo

del servidor del DDEC, sino que era suficiente con que se le concediera acceso al programa que se empleó para hacer la notificación en controversia para verificar si la notificación fue recibida.

El 21 de febrero de 2024, el Foro primario declaró No ha Lugar la solicitud de inspección ocular y el 19 de marzo de 2024,[4] dictó *Sentencia* desestimando sumariamente la *Demanda* con perjuicio. Estableció que, a base de las propias alegaciones de la *Demanda* y de las determinaciones de hechos incontrovertidos, no había incertidumbre jurídica en cuanto a si la señora O'Brien recibió la Orden de Revocación. No obstante, sí había incertidumbre sobre cuándo esta recibió la notificación. A pesar de esto, el Tribunal de Primera Instancia determinó que ya fuera a través de la notificación del correo electrónico del 20 de diciembre de 2021 o a través del Aviso de Cambio de Contribución del Departamento de Hacienda el 10 de marzo de 2023, la señora O' Brien sí advino en conocimiento de la revocación de su decreto bajo la Ley Núm. 22-2012. Asimismo, determinó que, aunque la señora O'Brien fue debidamente notificada de su derecho a revisión administrativa ante la Secretaria de Procedimiento Adjudicativo del Departamento de Hacienda, optó por presentar el recurso judicial en vez de ejercer su derecho a tener una revisión administrativa.

Inconforme, el 17 de abril de 2024, la señora O'Brien instó el presente recurso de *Apelación*. Plantea:

> **ERRÓ EL TRIBUNAL AL RESOLVER QUE LA APELANTE NO PODÍA EMPLEAR EL MECANISMO DE SENTENCIA DECLARATORIA PARA LA ADJUDICACIÓN DE UNA CONTROVERSIA SOBRE UN HECHO QUE TIENE CONSECUENCIAS JURÍDICAS PARA LAS PARTES.**

> **ERRÓ EL TRIBUNAL AL CONCLUIR QUE LA NOTIFICACIÓN CURSADA POR CORREO ELECTRÓNICO A LA APELANTE CUMPLIÓ CON EL DEBIDO PROCESO DE LEY, A PESAR DE QUE LA**

---

[4] Notificada el 20 de marzo de 2024.

**APELANTE ALEGÓ BAJO JURAMENTO QUE NUNCA LA HABÍA RECIBIDO; Y AL CONCLUIR QUE LA DETERMINACIÓN HABÍA ADVENIDO FINAL Y FIRME.**

**ERRÓ EL TRIBUNAL AL DICTAR SENTENCIA SUMARIAMENTE A PESAR DE EXISTIR UNA CONTROVERSIA FÁCTICA SOBRE SI LA APELANTE FUE NOTIFICADA DE LA RESOLUCIÓN.**

**ERRÓ EL TRIBUNAL AL DENEGAR LA SOLICITUD DE INSPECCIÓN FORMULADA POR LA PARTE APELANTE.**

**ERRÓ EL TRIBUNAL AL CONCLUIR QUE LA APELANTE FUE ADECUADAMENTE NOTIFICADA DE SU DERECHO A REVISIÓN ADMINISTRATIVA, CUANDO NI LAS COMUNICACIONES DEL DEPARTAMENTO DE HACIENDA DE MARZO DE 2023 O EL CORREO ELECTRÓNICO DEL DIRECTOR DE LA OFICINA DE EXENCIÓN DEL 27 DE JUNIO DE 2023 CONSTITUYERON UNA NOTIFICACIÓN FORMAL DE LA RESOLUCIÓN DE LA AGENCIA.**

**ERRÓ EL TRIBUNAL AL DESESTIMAR LA DEMANDA.**

El 17 de mayo de 2024, el DDEC presentó su correspondiente *Alegato* solicitando la confirmación de la sentencia apelada. Estando en posición de resolver, procedemos a así hacerlo.

II.

A.

La sentencia declaratoria es un "mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra quien la solicita".[5] Se trata de un recurso discrecional, que tiene la eficacia y vigor de una sentencia o resolución, mediante el cual, el tribunal puede declarar derechos, estados y otras relaciones jurídicas, aunque se inste o pueda instarse otro remedio.[6] Este mecanismo, tiene como propósito disipar una incertidumbre jurídica y contribuir a la paz social y puede ser dictado en procesos en los cuales los hechos alegados

---

[5] *Beltrán Cintrón* v. *ELA*, 204 DPR 89, 109 (2020) (citando a *Senado de PR* v. *Gobierno de Puerto Rico*, 203 DPR 62, 71 (2019), que a su vez cita a *Alcalde Guayama* v. *ELA*, 192 DPR 329, 333 (2015)).
[6] *Dalmau Santiago* v. *Oronoz Rodríguez*, 208 DPR, 115, 128 (2021).

demuestran que existe una controversia sustancial entre las partes con intereses legales adversos, sin que medie una lesión previa de estos.[7]

A pesar de que la sentencia declaratoria puede ser presentada, aunque se haya instado o pueda instarse otro remedio, "[c]omo [regla] general, [este recurso] no est[á] disponible para revisar decisiones administrativas [...], ya que se trata de un procedimiento ordinario".[8] Por tanto, se ha establecido que la sentencia declaratoria no puede ser utilizada cuando el legislador ha desarrollado un procedimiento administrativo específico para atender el asunto en controversia. Cónsono con ello, el profesor Demetrio Fernández Quiñones ha expresado lo siguiente:

> **La sentencia declaratoria es improcedente en todo caso en que exista un procedimiento administrativo específico.** Dos razones existen para solicitar la desestimación del recurso de sentencia declaratoria en el contexto del procedimiento administrativo. Primero, la falta de jurisdicción porque el legislador ha especificado un procedimiento de forma terminante y exclusivo. Segundo, la posibilidad de que no se hayan agotado los remedios administrativos.[9]

B.

Es contrario a la Constitución privar a las personas de su propiedad o libertad sin un debido proceso de ley.[10] La vertiente procesal del debido proceso de ley requiere que, de verse afectado algún derecho de propiedad o libertad de un ciudadano, este tenga acceso a un proceso que se adhiera a los principios de justicia e imparcialidad.[11] De este modo, se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y de

---

[7] *Beltrán Cintrón* v. 204 DPR, en la pág. 109; *Senado de Puerto Rico* v. 203 DPR, en la pág. 71.

[8] *Beltrán Cintrón* v. 204 DPR, en la pág. 109 (citando a J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., Publicaciones JTS, 2011, T. V, pág. 1783).

[9] *Beltrán Cintrón* v. 204 DPR, en las págs.109-110 (citando a Fernández Quiñones, op. cit., págs. 747-748).

[10] Art. II, Sec. 7, Const. PR, LPRA, Tomo 1.

[11] *Aut. Puertos* v. *HEO*, 186 DPR 417, 428 (2012).

propiedad del individuo se hagan a través de un procedimiento que sea justo y equitativo.[12]

Sin embargo, estas garantías constitucionales que se extienden al ámbito administrativo,[13] no constituyen un molde riguroso que se da en el abstracto, ya que su naturaleza es circunstancia y pragmática, no dogmática.[14] De hecho, el debido proceso de ley en el ámbito administrativo no tiene la misma rigidez que en los procedimientos judiciales.[15] Es decir, el debido proceso de ley no priva de flexibilidad a los organismos administrativos, sino que requiere un proceso justo y equitativo que respete la dignidad de los individuos.[16]

Ahora bien, con el fin de satisfacer las exigencias del debido proceso de ley, existen diversos requisitos que debe cumplir todo procedimiento adversativo: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado; (6) que la decisión se base en el récord.[17]

En armonía con lo anterior, la Ley Núm. 38-2017, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, establece en su Sección 3.1 lo siguiente:

> (a) Cuando por disposición de una ley, regla o reglamento o de esta Ley una agencia deba adjudicar formalmente una controversia, los procedimientos deberán regirse por las disposiciones de este Capítulo. No estarán incluidos los procedimientos voluntarios de resolución de disputas establecidos por ley o por reglamentos. Los procedimientos relativos a los asuntos y actuaciones del Secretario de Hacienda con respecto

---

[12] *Román Ortiz* v. *Oficina de Gerencia de Permisos*, 203 DPR 947, 953 (2020); *Fuentes Bonilla* v. *ELA*, 200 DPR 364, 394 (2018).

[13] *PVH Motor, LLC* v. *Junta de Subastas de la ASG*, 209 DPR 122, 130-131 (2022); *Aut. Puertos* v. 186 DPR, en la pág. 428; *Marrero Caratini* v. *Rodríguez Rodríguez*, 138 DPR 215, 220 (1995).

[14] *Nieves* v. *AM Contractors*, 166 DPR 399; 424-425 (2005); *PAC* v. *ELA*, 150 DPR 359, 376 (2000).

[15] *Román Ortiz* v. 203 DPR, en la pág. 954; *Álamo Romero* v. *Adm. Corrección*, 175 DPR 314, 329 (2009).

[16] *Ramírez* v. *Policía de PR*, 158 DPR 320, 337-338 (2002); *López Vives* v. *Policía de PR*, 118 DPR 219, 230-231 (1987).

[17] *Díaz Carrasquillo* v. *García Padilla*, 191 DPR 97, 111 (2014).

a las leyes de rentas internas del Gobierno de Puerto Rico se regirán por las siguientes normas:

> (1) Un funcionario designado por el Secretario de Hacienda realizará una determinación preliminar;
>
> (2) el contribuyente no conforme con la determinación preliminar solicitará una vista informal que presidirá un funcionario distinto al que realizó la determinación preliminar. Este realizará la determinación final por delegación del Secretario de Hacienda.

. . . .

En todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los siguientes derechos:

> (A) Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.
>
> (B) Derecho a presentar evidencia.
>
> (C) Derecho a una adjudicación imparcial.
>
> (D) Derecho a que la decisión sea basada en el expediente.[18]

La adherencia al debido proceso de ley impone a las agencias el deber de notificar adecuadamente de los dictámenes emitidos en los procedimientos adjudicativos.[19] El deber de notificar a las partes de una decisión final es un requisito del debido proceso de ley con el que se debe cumplir para que la persona afectada pueda enterarse de la decisión final que se ha tomado en su contra.[20] La garantía de notificación, salvaguardada por el debido proceso de ley, debe caracterizarse como "real y efectiva, ajustada a los preceptos estatutarios aplicables".[21] Consecuentemente, la validez de la notificación de una orden o resolución final no tan solo depende de que se dirija a la parte con derecho a ello, sino que se efectúe a través de los mecanismos autorizados.[22]

A tono con esa exigencia, cuando una agencia tiene información que le permita conocer que sus intentos de notificar a la parte interesada han resultado inútiles, debe realizar esfuerzos adicionales razonables, como se esperaría de una agencia deseosa de informar a las partes afectadas por un dictamen adverso.[23] Sin

---

[18] 3 LPRA § 9641.
[19] *Román Ortiz* v. 203 DPR, en la pág. 954.
[20] *Íd.*
[21] *PVH Motor, LLC* v. *Junta de Subastas de la ASG*, 209 DPR 122, 131 (2022).
[22] *Román Ortiz* v. 203 DPR, en la pág. 956.
[23] *Íd.* págs. 964-965.

embargo, no se exige lo absurdo e imposible a las agencias, sino que se haga lo razonable a la luz de la totalidad de las circunstancias en cada caso.[24]

Dicho lo anterior, debemos tener presente que la Ley 38-2017, fue enmendada por la Ley Núm. 85 de 4 de agosto de 2020, Ley 85-2020, para incorporar el medio de correspondencia electrónica como método de notificación a las partes de cargo, querellas, reclamos, resoluciones u órdenes. Esta enmienda, que entró en vigor inmediatamente después de su aprobación, autorizó a las agencias a notificar a las partes en un procedimiento de una determinación final de la agencia de forma electrónica siempre y cuando cumplieran con los requisitos para realizar una notificación adecuada conforme al debido proceso de ley.[25]

De manera que, las agencias tienen la facultad de usar medios de correspondencia electrónica, en sustitución o como complemento al correo ordinario, durante cualquier parte del proceso adjudicativo, en tanto se salvaguarde el derecho a notificación oportuna de los cargos o querellas, reclamos o alegaciones de las partes.[26] Desde entonces, las agencias deben notificar por correo ordinario o electrónico a las partes y a sus abogados, de tenerlos, la orden o resolución final, y archivar en autos copia del dictamen que se trate y de la constancia de la notificación.[27] Por consiguiente, la notificación por correo electrónico por parte de una agencia es un mecanismo oficial que cumple con las características imprescindibles del debido proceso de ley.

---

[24] *Íd.*
[25] *PVH Motor, LLC* v. 209 DPR, en la pág.137.
[26] Ley Núm. 85 de 4 de agosto de 2020, Ley 85-2020 dispone: "[p]ara enmendar las Secciones 3.2, 3.4, 3.9, 3.14, 3.15 y 3.16 de la Ley 38-2017, según enmendada, conocida como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico" con el propósito de permitir la notificación electrónica en los procedimientos adjudicativos ante las agencias; y para otros fines relacionados".
[27] 3 LPRA §9654.

C.

Aunque la Regla 10.2 de Procedimiento Civil de Puerto Rico[28] establece que, toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva, cualquier parte puede, mediante moción independiente debidamente fundamentada, esgrimir como defensa, entre otras, que la demanda deja de exponer una reclamación que justifique la concesión de un remedio.[29]

Ante una moción como esta, el foro primario tiene que tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorable a la parte demandante.[30] Por lo tanto, el tribunal debe conceder la desestimación cuando existan circunstancias que permitan a los tribunales determinar que la demanda carece de todo tipo de méritos o que la parte demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación.[31]

Según el inciso cinco de la Regla 10.2,[32] no debe desestimarse una demanda a menos que surja con toda seguridad que, sin importar los hechos que pudiese probar, la parte demandante no merece remedio alguno.[33] En ese caso, el tribunal deberá "considerar si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de este, la demanda es suficiente para constituir una reclamación válida".[34]

De igual forma, jurisprudencialmente se ha reiterado que la "la carencia de méritos puede consistir en la no existencia de una

---

[28] R.P. Civ. 10.2, 32 LPRA Ap. V, R. 10.2.
[29] *Íd.*
[30] *Colón Rivera et. al.* v. *ELA,* 189 DPR 1033, 1049 (2013); *El Día, Inc.* v. *Mun. Guaynabo,* 187 DPR 811, 821 (2013).
[31] *Ortiz Matías et. al.* v. *Mora Development,* 187 DPR 649, 652 (2013).
[32] 32 LPRA Ap. V, R. 10.2.
[33] *Colón* v. *Lotería,* 167 DPR 625, 649 (2006); *Dorante* v. *Wrangler,* 145 DPR 408, 414 (1998).
[34] *Pressure Vessels PR* v. *Empire Gas PR,* 137 DPR 497, 505 (1994).

ley que sostenga una reclamación como la que se ha hecho, en la ausencia de hechos suficientes para que la reclamación sea válida, o en la alegación de algún hecho que necesariamente destruya la reclamación".[35] A tenor con lo anterior, la demanda tiene que exponer hechos suficientes que, al ser aceptados como ciertos, establezcan de su faz una reclamación plausible que justifique la concesión de un remedio.[36] A esos efectos, se requiere que toda alegación contenga hechos suficientes que demuestren, sin necesidad de descubrimiento de prueba, que la reclamación es "plausible", ya que los hechos bien alegados satisfacen todos los elementos jurídicos de la causa de acción reclamada.[37]

Dicho lo anterior, en una moción donde se plantee la defensa de que la demanda deja de exponer una reclamación que amerite la concesión de un remedio, si se expusieren materias no contenidas en las alegaciones impugnadas y estas no fueran excluidas por el tribunal, la moción deberá ser considerada como una solicitud de renuncia a sentencia sumaria.[38] Por lo tanto, estará sujeta a las disposiciones de la Regla 36 de las Reglas de Procedimiento Civil.[39]

La referida Regla regula lo relacionado a la solicitud de sentencia sumaria. En lo concerniente a la moción que nos ocupa, la Regla 36.2 regula el procedimiento que se debe llevar a cabo cuando es la parte demandada la que pretende solicitar la sentencia sumaria.[40] Por su parte, la Regla 36.3 establece los parámetros con los que debe contar dicha moción de sentencia sumaria.[41] Dicha regla lee de la siguiente manera:

> (a) La moción de sentencia sumaria se notificará a la parte contraria y contendrá lo siguiente:

---

[35] *Reyes* v. *Sucn. Sánchez Soto*, 98 DPR 305 (1970).
[36] 32 LPRA Ap. V, R. 6.1.
[37] *Íd.*
[38] 32 LPRA Ap. V, R. 10.2.
[39] 32 LPRA Ap. V, R. 36.
[40] 32 LPRA Ap. V, R. 36.2.
[41] 32 LPRA Ap. V, R. 36.3.

> (1) una exposición breve de las alegaciones de las partes;
> (2) los asuntos litigiosos o en controversia;
> (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
> (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
> (6) el remedio que debe ser concedido.[42]
>
> . . . .

## III.

Atendemos conjuntamente los errores planteados por O'Brien. En este caso, el dictamen impugnado desestimó con perjuicio la *Demanda* de sentencia declaratoria incoada por la señora O'Brien, fundamentado en que la misma dejaba de exponer hechos que justificaran la concesión de un remedio. Específicamente, el Tribunal sentenciador encontró que la señora O'Brien pretendió utilizar el mecanismo de sentencia declaratoria para impugnar una determinación administrativa final y firme.

Para la señora O'Brien, la determinación del Foro primario fue errada ya que el remedio solicitado en su *Demanda* no era impugnar una determinación final y firme de la agencia de revocar el decreto contributivo, sino declarar a través de la sentencia declaratoria que ella: 1) nunca recibió la notificación de deficiencia por parte del DDEC; 2) nunca recibió una notificación de revocación de decreto contributivo; 3) nunca recibió una notificación del inicio de un procedimiento de revocación de decreto; y (4) que no se le proveyó la oportunidad de solicitar la celebración de una vista previo a la revocación del decreto. No le asiste la razón. Veamos por qué.

---

[42] *Íd.*

Ciertamente, los decretos contributivos constituyen contratos entre el concesionario y el Gobierno de Puerto Rico, y como tal, la ley entre las partes. En este caso, el contrato entre la señora O'Brien y el Gobierno de Puerto Rico se violentó cuando la señora O'Brien omitió rendir los informes anuales correspondientes. En respuesta a este incumplimiento, el DDEC le hizo llegar a la señora O'Brien varias notificaciones, entre ellas, una *Notificación de Deficiencia* y posteriormente, una *Orden de Revocación.* Ambas notificaciones enviadas por el DDEC fueron correctas en derecho, y se emitieron en cumplimiento con las leyes aplicables.

La doctrina es clara en que, la sentencia declaratoria como mecanismo discrecional para declarar derechos, estados y otras relaciones jurídicas, no puede anteponerse al procedimiento administrativo designado por las agencias. Es precisamente lo que la señora O'Brien ha intentado, al impugnar una determinación final administrativa en el foro judicial sin agotar los remedios provistos por la agencia. Mas allá de que se declaren derechos, su objetivo último es reabrir un procedimiento administrativo que tuvo una determinación final y firme ante la agencia correspondiente hace más de dos años.

El cuestionamiento sobre la omisión de notificación adecuada por parte del DDEC es tardía y carente de evidencia. La señora O' Brien omitió rebatir propiamente los hechos pertinentes planteados en la moción desestimatoria presentada por el DDEC.

Es forzoso concluir que el foro apelado no erró al emitir su Sentencia y procede su confirmación.

IV.

Por los fundamentos que anteceden, *confirmamos* la Sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del

Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones