Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| CONSTRUCTORES GILMAR INC.<br><br>*Recurrida*<br><br><br>v.<br><br><br>CASA CRISTIANA DE RESTAURACIÓN Y ADORACIÓN, INC.<br><br>*Peticionaria* | TA2025CE00246 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm.: HU2023CV01121<br><br>Sala: 206<br><br>Sobre: Incumplimiento de Contrato; Cobro de Dinero; Daños |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 16 de septiembre de 2025.

Comparece ante nos, Casa Cristiana de Restauración y Adoración, Inc. (Casa Cristiana o peticionaria) quien presenta recurso de *Certiorari* y nos solicita la revisión de la *Resolución Interlocutoria*[1] emitida y notificada el 3 de julio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Humacao (TPI o foro recurrido). Mediante el referido dictamen, el TPI declaró *No Ha Lugar* la *Moción en Solicitud de Reconsideración*[2], la cual estaba relacionada a una solicitud de desestimación por falta de parte indispensable presentada por la peticionaria.

Por los fundamentos que exponemos a continuación, **denegamos** la expedición del auto de *Certiorari*.

---

[1] Apéndice 75 del recurso de *Certiorari*.
[2] Apéndice 74 del recurso de *Certiorari*.

**I.**

La génesis del caso de autos ocurrió cuando el 3 de agosto de 2023, Constructores Gilmar Inc. (Gilmar o recurrida) instó una *Demanda*[3] por incumplimiento de contrato, cobro de dinero y daños en contra de Casa Cristiana, por trabajos realizados bajo un proyecto sufragado con fondos federales. En la misma, se argumentó que, el 16 de diciembre de 2021, las partes del caso de autos otorgaron un contrato titulado *"Agreement for Design Build Construction Services"* para el diseño y construcción del proyecto de reparaciones al edificio de Casa Cristiana localizado en Las Piedras, Puerto Rico, por la suma de seiscientos diez mil quinientos dólares ($610,500.00). Luego de sometidas varias certificaciones por concepto de trabajos realizados de los siguientes meses: 4 de marzo, 4 de abril, 4 de mayo y 8 de junio de 2022; la peticionaria no realizó el pago de ninguna de las certificaciones ni presentó objeción a las mismas oportunamente. Esto, a pesar de que los fondos para que Casa Cristiana recibiera el desembolso correspondiente de parte de la Oficina Central de Recuperación, Reconstrucción y Resiliencia (COR3) estaban asignados y disponibles.

Sin alegación responsiva por parte de la peticionaria y luego de varios incidentes procesales, el 26 de mayo de 2025, la misma presentó *Moción Solicitando Desestimación por Falta de Parte Indispensable*[4]. En esta, Casa Cristiana adujo que, BCPeabody constituía una parte indispensable en el caso de epígrafe. Toda vez que, dicha entidad fue el representante del dueño y gerente de un proyecto designado contractualmente por Casa Cristiana, con la encomienda expresa de inspeccionar, certificar y someter las facturas relacionadas con los trabajos de GILMAR ante

---

[3] Apéndice 1 del recurso de *Certiorari.*
[4] Apéndice 69 del recurso de *Certiorari.*

COR3/Agencia Federal para el Manejo de Emergencias (FEMA siglas en inglés) para fines de reembolso y cumplimiento técnico.

Por consiguiente, la peticionaria solicitó lo siguiente:

1. Determine que **BCPeabody** constituye una **parte indispensable** conforme a la Regla 16 de las Reglas de Procedimiento Civil de Puerto Rico;

2. Proceda a **DESESTIMAR el presente pleito**, en virtud de la **Regla 10.2(b)(6),** por no haberse incluido a dicha parte indispensable;

3. Conceda cualquier otro remedio que en Derecho y Justicia estime procedente[5]. (Énfasis provisto).

En respuesta, el 13 de junio de 2025, la recurrida sometió *Oposición a "Moción Solicitando Desestimación por Falta de Parte Indispensable"*[6]. Allí, arguyó que las alegaciones de la *Demanda* eran dirigidas específicamente a la peticionaria y sus incumplimientos de sus obligaciones. Igualmente, enfatizó que la parte obligada ante ellos en torno a las solicitudes de COR3/FEMA era Casa Cristiana y no BC Peabody.

Evaluadas las posiciones de las partes, el 17 de junio de 2025, el TPI emitió y notificó una *Resolución Interlocutoria*[7] en la cual declaró *No Ha Lugar* a la solicitud de desestimación de Casa Cristiana. Inconforme con la determinación, el 2 de julio de 2025, la peticionaria sometió una *Moción en Solicitud de Reconsideración*, esta vez, alegando que no tan solo BCPeabody era parte indispensable, sino también Disaster Recovery Specialist, LLC (DRS LLC.), pues eran los encargados contractualmente junto a Gilmar de aprobar y procesar los pagos correspondientes.

Sin embargo, al día siguiente, el foro recurrido emitió y notificó una *Resolución Interlocutoria* en la cual declaró *No Ha Lugar* la solicitud de reconsideración presentada por la peticionaria.

---

[5] *Íd*, pág. 3.
[6] Apéndice 72 del recurso de *Certiorari*.
[7] Apéndice 73 del recurso de *Certiorari*.

Insatisfecha aun, el 4 de agosto de 2025, Casa Cristiana acudió ante nos mediante el recurso de epígrafe y le imputó al TPI la comisión del siguiente error:

> Erró el Honorable Tribunal de Primera Instancia, al no desestimar la demanda a pesar de que los representantes autorizados de la parte Demandada BC Peabody, LLC y Disaster Recovery Specialist, LLC son parte indispensable.

Por su parte, el 14 de agosto de 2025, la recurrida presentó *Oposición a Expedición de Recurso de Certiorari*. Reiteró que la disputa objeto de la *Demanda* era exclusivamente sobre la contención de Gilmar de que Casa Cristiana incumplió con sus obligaciones contractuales. Así pues, con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### -A-

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior[8]. La determinación de expedir o denegar este tipo de recursos se encuentra enmarcada dentro de la discreción judicial[9]. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera"[10]. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho"[11].

Con el fin de que podamos ejercer de forma sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de *certiorari*, la

---

[8] Véase *Torres González v Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, 90-92 (2001).
[9] *Íd.*
[10] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2014); *Negrón v. Srio. de Justicia, supra*, pág. 91.
[11] *Íd.*

Regla 40 del Reglamento del Tribunal de Apelaciones[12], señala los criterios que para ello debemos considerar. Éstos son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido. Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención.

**-B-**

La moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil[13], "es aquella que formula el demandado antes de presentar su contestación a la demanda, en la cual solicita que se desestime la demanda presentada en su contra"[14]. La citada regla dispone que la parte demandada puede presentar una moción de desestimación en la que alegue las defensas siguientes:

(1) falta de jurisdicción sobre la materia;
(2) falta de jurisdicción sobre la persona;
(3) insuficiencia del emplazamiento;
(4) insuficiencia del diligenciamiento del emplazamiento;
(5) dejar de exponer una reclamación que justifique la concesión de un remedio;

---

[12] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. __, 215 DPR __ (2025).
[13] 32 LPRA Ap. V, R. 10.2.
[14] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008).

(6) **dejar de acumular una parte indispensable**[15]. (Énfasis nuestro).

Al resolver una moción de desestimación bajo la Regla 10.2 (5), *supra*, los tribunales deberán tomar "como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas"[16]. La norma que impera es que "tales alegaciones hay que interpretarlas conjuntamente, liberalmente, y de la manera más favorable posible para la parte demandante"[17]. Por lo tanto, "al examinar la demanda para resolver este tipo de moción se debe ser sumamente liberal y 'únicamente procedería [desestimar] cuando de los hechos alegados no podía concederse remedio alguno a favor del demandante'"[18]. Además, "[t]ampoco procede la desestimación, si la demanda es susceptible de ser enmendada"[19]

Nuestro máximo foro judicial ha expresado que al examinar una moción de este tipo "**debemos considerar, 'si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de [e]ste, la demanda es suficiente para constituir una reclamación válida'**". (Énfasis nuestro)[20]. Además, el Tribunal debe aceptar como ciertos todos los hechos que hayan sido bien alegados en la demanda y excluir de su análisis conclusiones legales. Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. Si de este análisis el Tribunal entiende que no se cumple con el estándar de plausibilidad entonces debe desestimar la demanda, pues no debe permitir que proceda una

---

[15] 32 LPRA Ap. V, R. 10.2. *González Méndez v. Acción Social de Puerto Rico*, 196 DPR 213, 234 (2016).

[16] *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra*, pág. 428.

[17] *Íd.,* pág. 429.

[18] *Colón Rivera v. Secretario, et al*, 189 DPR 1033, 1049 (2013), que cita a R. Hernández Colón, *Derecho Procesal Civil*, 4ta ed., San Juan, Ed. Lexis-Nexis, 2007, pág. 231.

[19] *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra*, pág. 429.

[20] *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra*, pág. 429, que cita a *Pressure Vessels P.R. v. Empire Gas P.R.*,137 DPR 497 (1994), *Unisys v. Ramallo Brothers*, 128 DPR 842 (1991).

demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba[21].

El doctor Cuevas Segarra nos comenta que el Tribunal Supremo de Puerto Rico explicó de forma acertada en *Reyes v. Sucn. Sánchez Soto*, 98 DPR 305, 309 (1970), lo siguiente:

> El texto de la actual Regla es aún más favorable para un demandante, ya que la moción para desestimar no ha de considerarse s[o]lo a la luz de una causa de acción determinada y sí a la luz del derecho del demandante a la *concesión de un remedio*, cualquiera que [e]ste sea. En vista de ello, las expresiones que hicimos en el caso de *Boulon*, particularmente la de que una demanda no debe ser desestimada por insuficiencia, **a menos que se desprenda con toda certeza que el demandante no tiene derecho a *remedio alguno* bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación**, tienen aún mayor virtualidad [...]. (Énfasis nuestro)

Para que el demandado prevalezca al presentar una moción de desestimación al amparo de la Regla 10.2 (5), *supra,* "debe establecer con toda certeza que el demandante **no tiene derecho a remedio alguno bajo cualquier estado de derecho** que pueda ser probado en apoyo a su reclamación, aun interpretando la demanda de la forma más liberal posible a su favor"[22]. (Énfasis nuestro). Sin embargo, esto último "se aplica solamente a los hechos bien alegados y expresados de manera clara y concluyente que de su faz no den margen a dudas"[23].

Por último, cabe mencionar que se plantea que cuando se presenta una moción de desestimación bajo la Regla 10. 2(5), *supra,* **"[l]a controversia no es si el demandante va finalmente a prevalecer, sino, si tiene derecho a ofrecer prueba que justifique su reclamación, asumiendo como ciertos los hechos [correctamente] alegados en la demanda.".** (Énfasis nuestro). Así pues, al analizarse una moción de desestimación presentada tras

---

[21] R. Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, LexisNexis, 2010, pág. 268.
[22] *Íd.,* pág. 530.
[23] Cuevas Segarra, *op. cit.*, pág. 529.

una demanda "el tribunal debe concederle el beneficio de cuanta inferencia sea posible de los hechos alegados en dicha demanda"[24].

### -C-

La Regla 16.1 de Procedimiento Civil[25] establece el mecanismo de acumulación de parte indispensable. Esta regla, en lo pertinente, establece lo siguiente: "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda. Cuando una persona que deba unirse como demandante rehúse hacerlo, podrá unirse como demandada".[26]

Sobre esta norma procesal nuestro Tribunal Supremo ha expresado, en primer término, que es parte de la protección constitucional que prohíbe que una persona sea privada de su libertad o propiedad sin el debido proceso de ley. En segundo término, que responde a la necesidad de incluir a una parte indispensable para que el dictamen judicial que pueda ser emitido sea completo para las personas que ya son partes en el pleito[27].

Asimismo, nuestra última instancia en derecho ha expresado que las cuestiones litigiosas ante el Tribunal no pueden adjudicarse correctamente sin la presencia de una parte cuyo interés o derecho puede verse seriamente afectado por una determinación judicial[28]. La ausencia de una parte indispensable priva al tribunal de jurisdicción para resolver la controversia[29].

Ahora bien, el "interés común" al que hace referencia la Regla 16.1, *supra*, no debe interpretarse por criterios puramente semánticos[30]. Dado que este **no se refiere a cualquier interés en el pleito, sino que tiene que ser un interés real e inmediato, no**

---

[24] *Íd.,* pág. 532.
[25] 32 LPRA Ap. V, R. 16.1.
[26] *Íd.*
[27] *RPR & BJJ, Ex parte,* 207 DPR 389 (2021).
[28] *Íd.*, pág. 14.
[29] *Íd.*
[30] *Íd.*

**especulativo ni a futuro, que impida la confección de un remedio adecuado porque podría afectar o destruir radicalmente los derechos de esa parte ausente**[31]. (Énfasis nuestro). La determinación sobre la necesidad de acumular una parte por ser indispensable es una tarea que le corresponde a los tribunales, según los hechos específicos de cada caso y el tipo de pleito[32]. Los tribunales deben evaluar factores tales como el tiempo, el lugar, el modo, las alegaciones, la prueba, la clase de derechos, los intereses en conflicto, el resultado y la formalidad[33]. "[L]o fundamental es determinar si el tribunal puede hacer justicia y conceder un remedio final y completo a las partes presentes sin afectar los intereses de la parte ausente"[34].

**-D-**

La Ley Núm. 55 de 1 de junio de 2020[35], según enmendada, conocida como el "Código Civil de Puerto Rico de 2020" (Código Civil del 2020) define el contrato como: "[e]l negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones"[36]. Así pues, nuestro ordenamiento dispone que "[el] contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa (...)"[37]. Una vez perfeccionado el contrato, el mismo tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley[38].

Es menester enfatizar que: "[e]s facultativo contratar o no hacerlo, y hacerlo, o no, con determinada persona. Estos derechos

---

[31] *Íd.*, págs. 14-15.
[32] *Íd.*, pág. 15.
[33] Íd., pág. 16.
[34] *Íd.*, citando a *Pérez Rosa v. Morales Rosado*, 172 DPR 216 (2007).
[35] 31 LPRA sec. 5311 *et seq.*
[36] Art. 1230, 31 LPRA sec. 9751.
[37] Art. 1237, 31 LPRA sec. 9771.
[38] Art. 1233, 31 LPRA sec. 9754.

no pueden ejercerse abusivamente ni contra una disposición legal. Las partes pueden acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público"[39].

### III.

En el caso de epígrafe, la peticionaria arguyó que el TPI incidió al no desestimar la *Demanda* presentada por Gilmar a pesar de que los representantes autorizados de BCPeabody y DRS LLC., eran parte indispensable.

De acuerdo con el marco jurídico antes reseñado, la Regla 52.1 de Procedimiento Civil, *supra,* nos faculta la revisión de resoluciones dictadas por el TPI, a manera de excepción cuando, entre otras instancias, se recurre de la denegatoria de una moción de carácter dispositivo. La *Moción Solicitando Desestimación por Falta de Parte Indispensable* presentada por la peticionaria, es una moción de carácter dispositivo, cuya denegatoria por el foro primario es revisable ante este Tribunal de Apelaciones mediante recurso de *Certiorari.*

No obstante, es preciso recalcar que nuestra discreción no se ejerce en el vacío. La Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* establece los criterios para nosotros determinar si debemos ejercer nuestra facultad discrecional revisora.

Así pues, evaluado el recurso de *Certiorari* aquí presentado por Casa Cristiana junto a la *Resolución Interlocutoria* recurrida, bajo los parámetros de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* somos del criterio que procede denegar la expedición del auto de *Certiorari.* Colegimos que, en la *Resolución Interlocutoria* recurrida, no medió prejuicio, parcialidad o error craso y manifiesto por parte del TPI[40]. Lo cierto es que, no está presente

---

[39] Art. 1232, 31 LPRA sec. 9753.
[40] Véase, Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. __, 215 DPR __ (2025).

ninguno de los criterios de la Regla 40 de nuestro Reglamento, *supra*, que mueva nuestra discreción para intervenir con el dictamen recurrido.

No identificamos que el foro recurrido haya actuado de manera arbitraria, caprichosamente o que hubiese abusado de su discreción al emitir la resolución recurrida. Tampoco nos encontramos ante una situación que amerite nuestra intervención para evitar un fracaso de la justicia. Por tanto, al amparo de los criterios que guían nuestra discreción, resolvemos que no se han producido las circunstancias que exijan nuestra intervención en esta etapa de los procedimientos. En consecuencia, procede denegar la expedición del auto de *Certiorari* solicitado por la parte peticionaria.

**IV.**

Por los fundamentos que anteceden, ***denegamos*** la expedición del auto de *Certiorari* solicitado por la peticionaria. Se devuelve el caso al foro de instancia para la continuación de los procedimientos.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones